## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ALLEN L. MOORE, | ) | |
| | ) | |
| Plaintiff,/Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 07-3324 |
| | ) | |
| THOMAS MONAHAN, DARRELL | ) | Judge Baker |
| SANDERS, DAVID KURFMAN, VICKI | ) | |
| KOKAS, ) BRENDA WILTS, BRENDA M. | ) | |
| LEONARD, ANDREW P. DUECKER, | ) | |
| CLIFTON R. McCALLA, JAMES C. | ) | |
| CLAYTON, TARRY WILLIAMS, SANDRA | ) | |
| SIMPSON, DIANE DOBIER, JOE PROCTOR, | ) | |
| AND VARIOUS OTHER DEFENDANT(S) | ) | |
| THAT WILL BE NAMED UPON THE | ) | |
| DISCOVERY OF THEIR IDENTITIES, | ) | |
| | ) | |
| Defendant/Respondents. | ) | |

## OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

NOW COMES Defendants, SANDRA SIMPSON, DIANE DOBIER and JOE PROCTOR (the "Liberty Defendants"), by and through their counsel, James C. Vlahakis, and in opposition to Plaintiff's Complaint state as follows:

### I.     Introduction

1.     This is Plaintiff's second lawsuit involving his confinement under the Sexually Violent Persons Act.  He has a suit pending in the Northern District of Illinois (where he is represented by court appointed counsel).  Recently, Plaintiff filed a prolix Motion to Reconsider the District Court's dismissal of aspects of his case.  *See* Exhibits A and B.  Plaintiff's Motion to Reconsider (which he filed pro se after his attorney made an oral *Anders* motion) was denied. *See* Exhibit C.  Plaintiff has never consented to sex offender treatment.

### II.     Plaintiff's Motion is Premature

2.     Plaintiff's discovery requests are premature given the fact that the Liberty

6318365v2 885614

Defendants did not file their appearances and answer until almost two weeks *after* Plaintiff purports to have issued discovery. Plaintiff claims to have issued discovery on or about April 8, 2008, and the Liberty Defendants appeared and filed their Answer on April 22, 20008.[1]

3.     Plaintiff's discovery is also premature as no Rule 16 or Rule 26(f) conference has taken place. Rule 26(d) specifically provides that "a party *may not* seek discovery from any source before the parties have conferred as required by Rule 26(f)." (emphasis supplied).

4.     Furthermore, Plaintiff's motion is premature has he has not attempted to engage in any pre-motion discourse with the under signed defense counsel.

5.     Plaintiff's motion is also premature as he filed on May 12, 2008, the day Defendant's discovery responses were due day (assuming for the sake of argument, that Plaintiff could have properly served his discovery before the Liberty Defendants even appeared or answered, and before either a Rule 16 or a Rule 26(f) conference). Since Plaintiff served discovery on April 8, 2008, the Liberty Defendants had until May 12th (30 days plus three days under FRCP 6(e)) to respond to discovery. While Plaintiff might be eager to litigate this case (he has not consented to sex offender treatment), the rules must be followed.

### III.    The Requests Seek Materials Outside the Control of the Liberty Defendants

6.     Defendants DOBIER and PROCTOR are "Team Leaders" who provide and/or supervise the delivery of sex offender specific treatment to consenting residents. A copy of their job descriptions are attached as Exhibit D. Defendant SIMPSON is a "Grievance Examiner" and does not provide medical care or treatment. A copy of her job description is attached as Exhibit

---

[1]     By order of court, Defendants were instructed to file an answer rather than move for dismissal.

6318365v2 885614

E.[2]

7.     The Liberty Defendants are not medical care providers (they are not physicians) and do not supervise medical providers. Rather, medical care is provided to residents at Rushville by a third-party contractor with DHS, Wexford Health Services.

8.     Accordingly, Request Nos. D and E, which seeks medical records (not sex offender specific records) should be summarily denied because the Liberty Defendants do not provide medical care and do not maintain Wexford Health Services' medical records.

9.     As for Request No. D, DHS and/or the Illinois Department of Corrections ("DOC"), have custody and control over Plaintiff's DOC based medical records.

10.     Further, the Liberty Defendants do not maintain or operate security cameras. Rather, dedicated DHS security staff (who have been sued in this matter) maintain and operate security cameras.  Accordingly, Request Nos. C and F, which seeks logs and records related to

---

[2]     Plaintiff, among other litigious residents of the Rushville Treatment Facility have sued Ms. Simpson for denying their grievances despite the fact that the Constitution does not afford a cause of action for the denial of grievances.   *See, e.g., George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.  A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Azeez v. DeRobertis*, 568 F.Supp. 8, 10 (N.D. Ill. 1982); *Grant v. Sutt*on, 2006 WL 2802050, *3 (S.D. Ill. 2006); *Agrawal v. Briley*, 2003 WL 164225 (N.D. Ill. 2003)).  *See also, White v. IDHS*, et al. 08 C 940 (N.D. Ill. 2008) ("The plaintiff cannot resuscitate his claim by suing grievance examiners . . . .  There is no constitutional right to an institutional grievance procedure. Illinois statutes and regulations establishing the Department of Corrections' grievance procedures neither create a liberty . . . .") **(Exhibit F)**.  Plaintiff joins a disturbing number of residents have chosen to sue Ms. Simpson for her role as the grievance examiner.  Defendant Simpson has filed numerous motions to dismiss which are currently pending.  Defendant Simpson is considering filing Rule 11 motions in all of these.  Given the fact that the law clearly provides that no cause of action may exist against a person who denies a grievance, it is not unreasonable to suggest that residents at the Rushville Facility are attempting to pressure Ms. Simpson to grant their grievances and/or are attempting to keep her away from her daily tasks by requiring her to respond to abusive lawsuits.  An general order should issue dismissing these claims in the various cases which would then place residents on notice that the cannot sue Ms. Simpson in the event she denies their grievances.

6318365v2 885614

audio/visual records, should be summarily denied because the Liberty Defendants do not maintain or operate security cameras or keep records related to these records.

11.    The Liberty Defendants do not have the power to procure answers on behalf of the DHS Defendants.   For example, in Request No. A, Plaintiffs seeks the production of documents from certain *former* DHS employees, Thomas Monahan and Darrell Sanders.   This Court should quash any discovery request issued to DHS and order Plaintiff to reissue discovery to counsel for DHS.   Further, Request No. B demands the production of  incident reports prepared by DHS security staff.  Again, Plaintiff should seek these records from DHS.

**III.    Plaintiff's Requests Are Overly Broad and Overly Burdensome**

12.    Request No. B seeks an unlimited amount of documents, because as it is phrased, it is not limited to Plaintiff.   While it now appears that Request No. B is directed solely to Plaintiff's records because Plaintiff's Motion to Compel argues that these documents are relevant to a "the incident on the North Central yard" which is the subject of this lawsuit.   To the extent Plaintiff is seeking or will seek the production of records related to al*l residents at the Treatment Facility*, his request should be rejected.

WHEREFORE, this Court should deny Plaintiff's motion, order that Plaintiff's discovery be held in abeyance until 30 days after the parties engage in a Rule 16 or a Rule 26(f) conference, and required Plaintiff for the fees incurred in responding to this premature and frivolous motion.

Respectfully submitted,

By: /s/ James C. Vlahakis_____

  Attorneys    for    Defendants    SANDRA
SIMPSON,    DIANE    DOBIER    and    JOE
PROCTOR

James C. Vlahakis
HINSHAW & CULBERTSON LLP
222 North LaSalle Street Suite 300

6318365v2 885614

Chicago, IL  60601-1081
Phone: (312) 704-3000
jvlahakis@hinshawlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2008, I electronically filed the above document with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record and mailed copy of same to the following party of record:

Allen Moore
RUSHVILLE
IL Department of Human Services
Treatment & Detention Facility
RR 1, Box 6A
Rushville, IL 62681

s/ James C. Vlahakis
James C. Vlahakis
Attorney for Defendants
HINSHAW & CULBERTSON LLP
222 North LaSalle, Suite 300
Chicago, IL 60601
tel: 312-704-3000
fax: 312-704-3001
jvlahakis@hinshawlaw.com

6318365v2 885614

Westlaw.

Slip Copy
Slip Copy, 2008 WL 111299 (N.D.Ill.)
**(Cite as: Slip Copy)**

Page 1

Moore v. Monahan
N.D.Ill.,2008.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
Allen L. MOORE, Plaintiff,
v.
Thomas MONAHAN, et al., Defendants.
**No. 06 C 6088.**

Jan. 10, 2008.

Allen L. Moore, Rushville, IL, pro se.
Alice Elizabeth Keane, Illinois Attorney General's
Office, James Constantine Vlahakis, Hinshaw &
Culbertson, Jack T. Riley, Brian Patrick Gainer,
Johnson & Bell, Ltd., Illinois Department of Human
Services, Illinois Department of Human Services,
Chicago, IL, Prisoner Correspondence, for
Defendants.

### MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge.
 *1 Plaintiff Allen L. Moore, currently a detainee
in the custody of the Illinois Department of Human
Services ("DHS") under the Illinois **Sexually Violent
Persons Commitment Act**, 725 ILCS 207/1 *et seq.*
("SVP Act"),[FN1] brings this pro se action under 42 U
.S.C. § 1983 regarding events that occurred at the
Joliet Treatment and Detention Facility ("TDF").[FN2]
Defendants Thomas Monahan, Darrell Sanders, and
Tarry Williams ("DHS Defendants") filed the present
motion to dismiss pursuant to Federal Rule of Civil
Procedure 12(b)(6).[FN3] Defendants Liberty
Healthcare Corporation, Shan Jumper, and Gerald
Grisphover ("Liberty Defendants"), as well as
Defendant Carol Vance, Director of Health Care
Services, have also filed motions to dismiss. For the
following reasons, the Court grants in part and denies
in part Defendants' motions.

> FN1."This statute allows the court to civilly
> commit an individual who has been
> convicted of a **sexually violent** offense and
> is dangerous because the person suffers from
> a mental disorder that makes it substantially
> likely he will commit further acts of sexual
> violence."*Lieberman v. Thomas,* 505 F.3d

665, 667 (7th Cir.2007).

> FN2. Moore has since been transferred to
> the DHS facility in Rushville, Illinois.

> FN3. The Court granted Defendants Jack
> Graham, Shawndo Cleveland, Leslie Hogan,
> Steve Strock, Bernard M. Akpan, and
> Tammy Chasteen leave to adopt the DHS
> Defendants' motion to dismiss.

### STANDARD OF REVIEW

051 Extra cent-Y found within cent-Y markup.
 "A motion under Rule 12(b)(6) challenges the
sufficiency of the complaint."*Christensen v. County
of Boone, Ill.,* 483 F.3d 454, 458 (7th Cir.2007).
Under Fed.R.Civ.P. 8(a)(2), a complaint need only
include "a short and plain statement of the claim
showing that the pleader is entitled to relief."This
statement must "give the defendant fair notice of
what the plaintiff's claim is and the grounds upon
which is rests."*Swierkiewicz v. Sorema N.A.,* 534
U.S. 506, 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)
(quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct.
99, 2 L.Ed.2d 80 (1957)); *see also Erickson v.
Pardus,* --- U.S. ----, ----, 127 S.Ct. 2197, 2200, 167
L.Ed.2d 1081 (2007). Under Rule 8(a)(2), a plaintiff's
"factual allegations must be enough to raise a right to
relief above the speculative level."*Bell Atlantic v.
Twombly,* --- U.S. ----, ----, 127 S.Ct. 1955, 1959,
167 L.Ed.2d 929 (2007); *see also EEOC. v.
Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th
Cir.2007). As the Seventh Circuit recently explained,
the Supreme Court's decision in *"Twombly did not
signal a switch to fact-pleading in the federal
courts."Airborne Beepers & Video, Inc. v. AT & T
Mobility LLC,* 499 F.3d 663, 667 (7th Cir.2007)
(citing *Erickson,* 127 S.Ct. at 2200)."[W]hen ruling
on a defendant's motion to dismiss, a judge must
accept as true all of the factual allegations contained
in the complaint."*Erickson,* 127 S.Ct. at 2200. In
addition, the Court construes Moore's pro se
Complaint liberally. *See Kaba v. Stepp,* 458 F.3d 678,
681 (7th Cir.2006).

### BACKGROUND

**I. Cell Reassignment**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 111299 (N.D.Ill.)
(Cite as: Slip Copy)

In his Complaint, Moore alleges that on December 19, 2005, at about 2:35 p.m., Defendant Jack Graham told him that the cell assignment committee had reassigned him to a cell already occupied by inmate Vincent Limpscomb. Moore alleges that he told Graham that he did not want to move in with Limpscomb because Limpscomb outweighed Moore by 80 pounds and they did not get along. Moore informed Graham that he would move cells, but not into a cell with just anyone. Graham then informed Moore that he did not have an option in the matter-either he moved in with Limpscomb or they would place him on secure lockdown. Moore further alleges that he did not argue with Graham, but asked him if he could get some ice. Graham gave Moore permission to do so. After he got his ice, Graham and a security therapist escorted Moore back to his cell, which Moore entered without incident.

## II. Extraction of Moore From His Cell

**\*2** Shortly after Moore returned to his cell, Defendants Graham and Tarry Williams came to his cell and told him that they were there to confiscate his personal property, informing him that if he refused to move into the cell with Limpscomb, they would move Moore's property there. Moore also alleges that Williams refused his request for an inventory list and receipt of his property.

Moore further maintains that at about 3:00 p.m., Defendants Williams, Graham, Bernard Akpan, Leslie Hogan, Shawndo Cleveland, Tony Humphrey, and Timothy Burnette came to his cell. Williams and Akpan then ordered Graham, Hogan, Cleveland, and Humphrey to extract Moore from his cell, while Burnette videotaped the extraction. Moore claims he was punched and kicked multiple times and then dragged onto the walk way.

Also, Moore alleges that Defendants Thomas Monahan and Darrell Sanders were aware of this attack because they initially approved and ordered it. Moore also claims that Defendants Monahan, Sanders, Williams, Shan Jumper, Lea Chankin, and the Liberty Healthcare Corporation approved of a "policy" of moving a detainee's personal property to the cell to which the detainee had refused to move because he could not get along with the cell's current occupant. Moore alleges that this policy-in effect-placed the personal property in the care of the person with whom the detainee could not get along. Moore alleges that because he refused to give up his personal property, he was physically assaulted and suffered injuries to his head and back and had blood in his urine.

## III. Medical Treatment

Moore further claims that after the alleged assault he asked Defendant Tammy Chasteen if he could see a doctor. She told him that he looked fine to her. Shortly thereafter, Moore alleges that he became dizzy and fell onto the floor of the observation cell in which he had been placed. Chasteen then called the medical health care unit, allegedly stating that she thought Moore was faking it. Thereafter, Defendants Williams, Akpan, Thompson, and a nurse came to the observation cell. Williams and Akpan told Moore to get up so that he could be handcuffed. Moore told them he was in extreme pain and could not get up off the floor. Williams responded that if he did not get up to be handcuffed, then the nurse would not examine him. Further, Moore alleges that the nurse argued with Williams and Akpan and that they finally allowed her to enter the observation cell to examine Moore who was bleeding profusely from a deep cut on his head. Thereafter, Moore was taken to the hospital care unit where his cut was bandaged. Several days later a doctor saw him, gave him pain medication, and scheduled him for X-rays.

## IV. Incidents After Moore's Alleged Assault

Next, Moore alleges that Williams-in order to prevent Moore from filing a lawsuit-gave orders that no one was allowed to talk to Moore, refused to allow Moore to call his family or his attorney, and allegedly made false and fraudulent charges against Moore so that he would violate his parole and accordingly would be returned to prison. In addition, Moore claims that when Defendants returned his personal property on October 4, 2006, family photographs and legal documents that he intends to use at his SVP Act trial were missing.

## V. Cell Assignment & Cell Conditions

**\*3** Finally, Moore alleges that Monahan, Sanders, Jumper, Chankin, Vance, and Liberty Healthcare use cell assignments as a means to pressure pre-trial detainees into consenting to sexual

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

offender treatment. Moore also alleges that he was housed in a cell that was roach-infested year round and plagued with "wasp spiders" and bees during the summer. He claims the water was foul and contained pollutants. He also alleges that his small cell contained a double steel bunk, toilet, sink, but had no chair or table. Moore further alleges that his cell was inadequately heated in the winter and extremely hot in the summer.

## *ANALYSIS*

### I. Moore's Claims

In his Complaint, Moore brings several constitutional claims pursuant to 42 U.S.C. § 1983. To state a constitutional claim under Section 1983, a plaintiff must allege that a government official (1) acting under color of state law, (2) deprived him of a right secured by the Constitution or laws of the United States. *See Christensen v. County of Boone, IL,* 483 F.3d 454, 459 (7th Cir.2007).

### A. Sharing Cell with Limpscomb

First, Moore alleges that Defendants violated his constitutional rights when they informed him that he would be moved into a cell already occupied by Limpscomb, although Moore objected to this move because he did not get along with Limpscomb and Limpscomb outweighed him. Moore also argues that this cell reassignment was contrary to a policy providing that inmates who did not get along would not be celled together.

### 1. Double Celling

Construing Moore's pro se Complaint liberally, *see Kaba,* 458 F.3d at 681, the Court first addresses the claim of **double celling**. It is well-established that **double celling** of detainees does not amount to punishment, and therefore, does not violate a detainee's constitutional right to be free from punishment without the benefit of due process. *See Bell v. Wolfish,* 441 U.S. 520, 530-43, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Allison v. Snyder,* 332 F.3d 1076, 1079 (7th Cir.2003). In *Wolfish,* the Supreme Court held that a double bunking policy was not meant to punish pre-trial detainees housed at the facility, and thus did not violate the detainees' constitutional rights. *Id.* at 540.The Supreme Court commented that there is not "some sort of one man,

one cell principle lurking in the Due Process Clause of the Fifth Amendment."*Id.* at 542.In *Allison,* the Seventh Circuit considered the conditions of confinement of individuals detained under the Illinois **Sexually Violent** Persons Act at the Big Muddy Correctional Facility and determined that **double celling** did not amount to punishment, explaining:

> Details such as **double celling** add nothing to plaintiffs' contentions.*Wolfish* rejected an argument that this practice equates to punishment. 441 U.S. at 530-43, 99 S.Ct. 1861, 60 L.Ed.2d 447. College dorms, hospitals, and military barracks house people more than one to a room without amounting to punishment. Just so at Big Muddy.

**\*4**.*Id.* at 1079.Therefore, any claim regarding **double celling** is not actionable under Section 1983.

### 2. Failure to Protect

Although **double celling** does not violate Moore's constitutional rights, any claim that prison officials were deliberately indifferent to Moore's safety may be actionable under the Eighth Amendment.[FN4]*See Brown v. Budz,* 398 F.3d 904, 909 (7th Cir.2005). Specifically, under the Eighth Amendment, prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates," in particular, "to protect prisoners from violence at the hands of other prisoners."*Id.* (citation omitted). To state a failure to protect claim, Moore must allege that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) Defendants acted with "deliberate indifference" to that risk. *Brown,* 398 F.3d at 909 (citation omitted). To satisfy the first prong, "a plaintiff must allege not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that serious harm might actually occur."*Id.* at 910.To satisfy the second prong, a plaintiff must show that the defendant actually knew of the substantial risk of serious harm, yet disregarded it.*Guzman v. Sheahan,* 495 F.3d 852, 859 (7th Cir.2007).

> FN4. The Court recognizes that detainees such as Moore are protected by the Fourteenth Amendment's Due Process Clause under the circumstances. *See Brown v. Budz,* 398 F.3d 904, 910 (7th Cir.2005) (there is little practical difference between Eighth Amendment and Fourteenth Amendment standards).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In this case, Moore's allegations do not satisfy either prong of his failure to protect claim. According to the Complaint, Moore told Defendants that he did not get along with inmate Limpscomb and that Limpscomb outweighed him. Moore, however, does not allege that he told Defendants that Limpscomb had threatened him in any way or that he was exposed to any serious harm, and thus Moore's allegations fail to properly allege the first prong. Next, Moore does not allege that Defendants knew of any substantial risk of serious harm and yet disregarded it-as required under the second prong of a failure to protect claim. *See Guzman,* 495 F.3d at 859;*Brown,* 398 F.3d at 913. Because Moore's factual allegations do not "raise a right to relief above the speculative level,"*see Bell Atlantic v. Twombly,* 127 S.Ct. at 1959, he has failed to properly allege his failure to protect claim. The Court thereby dismisses this claim without prejudice.

**3. DHS Policy**

In his Complaint, Moore also asserts that DHS has a policy regarding the celling of inmates who do not get along, yet Defendants forced him to bunk with Limpscomb. Assuming, *arguendo,* that any such policy exists, DHS' violation of its own rule or policy-in and of itself-does not amount to a constitutional violation. *See Allison,* 332 F.3d at 1078-79;*Pasiewicz v. Lake Co. Forest Pres. Dist.,* 270 F.3d 520, 526 (7th Cir.2001). Because Moore has failed to allege a constitutional claim based on the alleged DHS policy, the Court dismisses this claim without prejudice.

**B. Use of Excessive Force in Extracting Moore from His Cell**

**\*5** Construing Moore's pro se Complaint liberally, Moore also alleges that Defendants violated the Eighth Amendment by using excessive force when they extracted him from his cell after he refused to move. Defendants, on the other hand, argue that the core judicial inquiry in determining whether an official used excessive force in violation of the Eighth Amendment is whether the force was applied in a good-faith effort to maintain or restore discipline rather than to maliciously and sadistically cause harm. *See Hudson v. McMillian,* 503 U.S. 1, 6, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *see also O'Malley v. Litscher,* 465 F.3d 799, 804 (7th

Cir.2006). Put differently, Defendants argue that the force that the security officers used was the type authorized for security purposes in a good-faith effort to maintain discipline.

As discussed, the purpose of a motion to dismiss is to test the sufficiency of a complaint-not to decide the merits of a plaintiff's claim. *See Christensen,* 483 F.3d at 458. Therefore, at this procedural posture, the Court will not-and cannot-determine whether the alleged force was the type authorized for security purposes as Defendants maintain. Because Moore properly alleges an Eighth Amendment excessive force claim, the Court denies Defendants' motion to dismiss this claim.

**C. Denial & Delay of Medical Care**

Next, Moore alleges that Defendants initially denied him medical care after the alleged assault and that his medical care was ultimately delayed. "Prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs."*Williams v. Liefer,* 491 F.3d 710, 714 (7th Cir.2007) (citing *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Moreover, the Due Process Clause of the Fourteenth Amendment prohibits deliberate indifference to the serious medical needs of pretrial detainees. *Chapman v. Keltner,* 241 F.3d 842, 845 (7th Cir.2001). Deliberate indifference has both objective and subjective elements. *See Edwards v. Snyder,* 478 F.3d 827, 830 (7th Cir.2007) (*Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Specifically, to state a claim of deliberate indifference, a plaintiff must allege: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that medical condition. *Williams,* 491 F.3d at 714.

A medical condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention" constitutes a serious medical need. *Edwards,* 478 F.3d at 830-31 (citation omitted). In this case, Moore alleges that he suffered injuries to his head and back and that he had blood in his urine as a result of the assault. He further alleges that after he was placed in an observation cell, he became dizzy and fell down and was in so much pain that he could not get up off the floor when ordered to do so. Moore also alleges that he was bleeding profusely from a cut on his head. Based on his

allegations, Moore describes an arguably serious medical condition, and thus satisfies the objective component of his deliberate indifference claim. *See* Williams, 491 F.3d at 714;Edwards, 478 F.3d at 830-31.

**\*6** Moore has also sufficiently alleged the subjective component of his deliberate indifference claim. To satisfy the subjective prong of deliberate indifference, Moore must allege that Defendants were aware of and consciously disregarded his medical needs. *See* Farmer, 511 U.S. at 837;Estelle v. Gamble, 429 U.S. at 103-04. As alleged in his Complaint, Chasteen's delay in seeking medical care for Moore and the alleged delay by Williams, Akpan, and Thompson in allowing the nurse to examine him sufficiently states a claim. *See* Williams, 491 F.3d at 716 ("reasonable jury could have concluded that a delay in medical treatment unnecessarily prolonged" plaintiff's "pain and may have exacerbated [his] medical condition"); *see also* Gil v. Reed, 381 F.3d 649, 662 (7th Cir.2004) (recognizing that "hours of needless suffering" can constitute compensable harm). Accordingly, the Court denies Defendants' motion to dismiss Moore's deliberate indifference claim.

**D. Loss of Photographs & Legal Papers**

Next, Moore alleges that Defendants lost two types of personal property-photographs of his family and legal documents for his trial. First, the loss of family photographs does not constitute a deprivation of property without due process of law in violation of the Fourteenth Amendment if the government provides an adequate postdeprivation remedy for the loss. *See* Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); Parratt v. Taylor, 451 U.S. 527, 543-44, 101 S.Ct. 1908, 68 L.Ed. 420 (1981); *see also* Wynn v. Southward, 251 F.3d 588, 592-93 (7th Cir.2001). Illinois law provides actions for replevin and conversion that are sufficient to redress Moore's claim regarding his photographs. *See* Gable v. City of Chicago, 296 F.3d 531, 539-40 (7th Cir.2002) (Illinois cause of action for replevin provides adequate postdeprivation remedy); Stewart v. McGinnis, 5 F.3d 1031, 1035-37 (7th Cir.1993) (tort claim may be filed in the Illinois Court of Claims in regard to destruction of property); Greco v. Guss, 775 F.2d 161, 169 (7th Cir.1985) (Illinois cause of action for conversion provides adequate postdeprivation remedy). The Court thereby dismisses Moore's claim regarding the loss of his

photographs with prejudice.

In addition, Moore claims that legal papers consisting of documents regarding his conviction which he intends to use in his defense at his anticipated trial are also missing-allegations that trigger a possible constitutional claim concerning the deprivation of his access to the courts. *See* Gregory v. Nunn, 895 F.2d 413, 414-15 (7th Cir.1990) (per curiam). Moore, however, also alleges that he was not allowed to call his attorney who represents him in his SVP Act claim. Because Moore has alleged that he has an attorney in his underlying action, his right to access to the courts is satisfied. *See* Walters v. Edgar, 163 F.3d 430, 436 (7th Cir.1998) (inmate represented by counsel "can hardly complain of a denial of access to the courts."); *see also* Kunzelman v. Thompson, 799 F.2d 1172, 1178-80 (7th Cir.1986) (inadequate law library claim not cognizable when jail provided system of legal assistance by public defenders). Because Moore alleges that he is represented by counsel in his underlying action, the Court dismisses his access to courts claim with prejudice. *See* Edwards, 478 F.3d at 830 ("A complaint can also allege too much; a plaintiff may unwittingly plead himself out of court by alleging facts that preclude recovery.").

**E. Conditions of Confinement**

**\*7** Moore also alleges that Defendants violated his constitutional rights by denying him "humane conditions of confinement." *See* Farmer, 511 U.S. at 832-33, 37. "Humane conditions of confinement" include "adequate food, clothing, shelter, and medical care."Farmer, 511 U.S. at 832-33. A **sexually violent** person-similar to a pretrial detainee-may not be subjected to conditions that amount to punishment without due process of law. *See* Youngberg v. Romeo, 457 U.S. 307, 320-21, 102 S.Ct. 2453, 73 L.Ed.2d 28 (1982); Sain v. Wood, ---F.3d ----, 2008 WL 80643, at \*6 (7th Cir. Jan.9, 2008); Allison, 332 F.3d at 1079. In this regard, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."Youngberg, 457 U.S. at 320-21;see also Allison, 332 F.3d at 1079. Moreover, "[d]ue process requires that the conditions and duration of confinement ... bear some reasonable relation to the purpose for which persons are committed."Seling v. Young, 531 U.S. 250, 265, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001). Under this

standard, the Constitution does not require that detainees receive "optimal treatment." *See West v. Schwebke,* 333 F.3d 745, 748 (7th Cir.2003). Instead, "all the Constitution requires is that punishment be avoided and medical judgment exercised."*Id.* at 749;*see also Wolfish,* 441 U.S. at 537 (fact that "detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment .' "). Put differently, detainees may "be subjected to conditions that advance goals such as preventing escape and assuring the safety of others, even though they may not be punished."*Allison,* 332 F.3d at 1079 (citation omitted) (persons detained before trial are subjected to the ordinary conditions of confinement).

**1. Forced Consent to Participate in Sexual Offender Treatment**

Moore alleges that Defendants used cell assignments as punishment and to pressure "**sexually violent** persons" to consent to participating in sexual offender treatment.[FN5] Courts in this district have addressed similar claims concluding that the use of cell assignments and privileges for detainees who participate in sexual offender treatment is warranted based on prison safety and security concerns. *See, e.g., Hargett v. Adams,* No. 02 C 1456, 2005 WL 399300, at *8 (N.D.Ill. Jan.14, 2005). In *Hargett,* it was not unconstitutional to base the receipt of privileges on a detainee's participation in sexual offender treatment and the detainee's good behavior, stating:

> FN5. Reviewing Moore's pro se Complaint liberally, he makes no allegations that Defendants somehow violated his equal protection rights. *See Brown v. Budz,* 398 F.3d 904, 916 (7th Cir.2005).

The use of a variety of statuses within the TDF that correspond with privileges, including room location, increased freedom of movement, and access to certain commissary items, is not atypical of institutional and quasi-correctional settings. There are rational security concerns underlying the decision to have all patients initially begin at a lower end of the privilege continuum: in many instances, the staff do not initially know the potential risks of a new patient. In addition, making privileges contingent on good behavior and participation in treatment, creates

positive contingencies and reinforcements for productive therapeutic behavior.

*8*Hargett,* 2005 WL 399300, at *8. Indeed, the Supreme Court has reasoned that "[a]n essential tool of prison administration ... is the authority to offer inmates various incentives to behave" and the "Constitution accords prison officials wide latitude to bestow or revoke these perquisites as they see fit."*Kune v. Lile,* 536 U.S. 24, 39, 122 S.Ct. 2017, 153 L.E.2d 47 (2002). Meanwhile, other courts in this district have adopted Judge Leinenweber's reasoning in *Hargett.See McGee v. Monahan,* No. 06 C 3538, 2007 WL 2728756, at *4-5 (N.D.Ill. Sept.14, 2007); *Lieberman v. Budz,* No. 03 C 2009, 2007 WL 1810493, at *9 (N.D.Ill. June 19, 2007). The Court agrees with these rulings and likewise adopts the *Hargett* court's reasoning. The Court therefore dismisses this claim with prejudice.

**2. Foul, Polluted Water**

Next, Moore alleges that the water at the Joliet TDF was foul and contained pollutants. Courts in this district have addressed similar pro se prisoner complaints that the water is unsafe in the Joliet, Illinois area and have uniformly rejected these claims. *See, e.g., Lieberman v. Budz,* No. 03 C 2009, 2007 WL 1810493, at *9 (N.D.Ill. June 19, 2007). As the Seventh Circuit has explained:

Poisoning the prison water supply or deliberately inducing cancer in a prisoner would be forms of cruel and unusual punishment, and might be even if the harm was probabilistic or future rather than certain and immediate, *Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). But failing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not. *McNeil v. Lane,* 16 F.3d 123, 125 (7th Cir.1993); *Steading v. Thompson,* 941 F.2d 498 (7th Cir.1991); *Harris v. Fleming,* 839 F.2d 1232, 1235-36 (7th Cir.1988); *Clemmons v. Bohannon,* 956 F.2d 1523, 1527 (10th Cir.1992) (en banc). Many Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans.*McNeil v. Lane, supra,* 16 F.3d at 125;*Givens v. Jones,* 900 F.2d 1229, 1234 (8th Cir.1990). It would be inconsistent with this principle to impose upon prisons in the name of the Constitution a duty to take remedial measures against pollution or other contamination that the agencies

responsible for the control of these hazards do not think require remedial measures.

*Carroll v. DeTella,* 255 F.3d 470, 472-73 (7th Cir.2001). Based on this precedent, Moore's claim that the water at the Joliet TDF was foul and polluted-the same water used by the area's general population-is without merit. The Court thereby dismisses this claim with prejudice.

### 3. Lack of Table & Chair in Cell

Moore also complains that his small cell at the Joliet TDF did not have a table or chair, and thus Defendants somehow violated his constitutional rights. It is well-settled in this circuit that the deprivation of amenities does not amount to cruel and unusual punishment under the Eighth Amendment. *See Henderson v. Lane,* 979 F.2d 466, 469 (7th Cir.1992); *Davenport v. DeRobertis,* 844 F.2d 1310, 1316 (7th Cir.1988). Accordingly, a prison official's failure to provide a desk and chair in a plaintiff's cell does not amount to conditions that constitute punishment without due process of law. *Cf. Luedtke v. Gudmanson,* 971 F.Supp. 1263, 1270 (E.D.Wis.1997). The Court thus dismisses Moore's claim based on the lack of a table and chair in his cell with prejudice.

### 4. Inadequate Heat in Winter & Extreme Heat in Summer

**\*9** Next, Moore alleges that his cell was inadequately heated in the winter and extremely hot in the summer. Indeed, prison officials must provide inmates with adequate heat and ventilation. *See Del Raine v. Williford,* 32 F.3d 1024, 1035 (7th Cir.1994); *Henderson v. DeRobertis,* 940 F.2d 1055, 1059 (7th Cir.1991). In *Del Raine,* the plaintiff alleged that he was stripped searched, placed in an empty cell without any clothing for 15 to 30 minutes at a time, and on one day the wind chill factor was 40 to 50 degrees below zero.*Id.* at 1050.Based on the plaintiff's allegations, the Seventh Circuit concluded that "Del Raine's allegations create a possible inference that he was routinely placed in a cell with unreasonably low temperatures and without adequate clothing," and thus the plaintiff sufficiently alleged his claim based on the cold conditions of his confinement. *Id.* at 1050-51.

Here, Moore's allegations that his cell was inadequately heated in the winter and extremely hot in the summer does not create any such inference. *See Antonelli v. Sheahan,* 81 F.3d 1422, 1433 (7th Cir.1996) ("Prisoners have a right to protection from **extreme** cold.") (emphasis added). Put differently, Moore's bare-boned allegations do not suggest that he has a "right to relief above the speculative level."*Bell Atlantic v. Twombly,* 127 S.Ct. at 1959. As such, the Court dismisses Moore's claim based on the alleged heat and cold without prejudice.

### 5. Pest Infestation

Moore claims he was housed in a cell that was roach-infested year round and plagued with "wasp spiders" and bees during the summer. Allegations of prolonged exposure to pests, along with significant physical harm, may rise to a constitutional violation. *See Sain v. Wood,* --- F.3d ----, 2008 WL 80643, at *7;*Antonelli v. Sheahan,* 81 F.3d 1422, 1431 (7th Cir.1996) (sixteen months of pest infestation is a prolonged deprivation affecting prisoner's health); *see, e.g., Pritchett v. Page,* No. 99 C 8174, 2000 WL 1129891, at *9 (N.D.Ill. Aug.9, 2000) ("plaintiff's claim that his cell has been infested for many months by 'hazardous bugs' that regularly bite him states a cognizable claim for relief under Section 1983."). Although Moore contends that his cell was infested with pests year round, his factual allegations fail to raise his right to relief above the speculative level because he makes no allegations concerning the prolonged infestation impacting his health. *See Antonelli,* 81 F.3d at 1431. Therefore, the Court dismisses Moore's pest infestation claim without prejudice.

### F. False Information Concerning Parole Report

Moore also alleges that Williams-in order to prevent Moore from filing a lawsuit-gave orders that no one was allowed to talk to Moore and refused to allow Moore to call his family or his attorney. Further, Moore maintains that Williams made false and fraudulent charges against Moore so that he would violate his parole and be returned to prison. Moore attaches to his Complaint the parole violation report indicating that he would be afforded a revocation hearing before the Prisoner Review Board or Parole Board. (R. 1-1, Compl., Exs.A-1.) Moore also attaches the Prisoner Review Board's Report revoking his parole. *See McCready v. eBay, Inc.,* 453 F.3d 882, 891 (7th Cir.2006) ( Federal Rule of Civil Procedure 10(c) provides that "[a] copy of any

Slip Copy                                                                                    Page 8
Slip Copy, 2008 WL 111299 (N.D.Ill.)
(Cite as: Slip Copy)

written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

**\*10** It has long been held that when an inmate has been accorded due process in the form of a disciplinary hearing, his allegation that a disciplinary or conduct report was falsified does not state a cognizable due process claim. *See Lagerstrom v. Kingston,* 463 F.3d 621, 624-25 (7th Cir.2006); *McPherson v. McBride,* 188 F.3d 784, 787 (7th Cir.1999); *Hanrahan v. Lane,* 747 F.2d 1137, 1139-41 (7th Cir.1984). Because Moore was afforded a parole revocation hearing, his claim that Williams fabricated information so that Moore's parole would be revoked does not state a due process claim. *See Lagerstrom,* 463 F.3d at 623 (hearing's procedural safeguards adequate protection against prison official's arbitrary actions). Thus, the Court dismisses Moore's claim based on Williams' alleged "fraudulent" charges against Moore with prejudice.

Meanwhile, how Williams' conduct of not allowing anyone to talk to Moore or refusing to let Moore make calls to his family or attorney would prevent Moore from filing this action is not clear, especially because Moore did file this action-well within the two-year statute of limitations for his constitutional claims. *See Jogi v. Voges,* 480 F.3d 822, 836 (7th Cir.2007). The Court accordingly dismisses this claim with prejudice.

In sum, the Court dismisses the following claims with prejudice: (1) Moore's claim based on **double celling**; (2) Moore's loss of photographs and legal papers; (3) Moore's conditions of confinement claims based on the lack of a table or chair and polluted water; (4) Moore's allegations that cell assignments were used as punishment and to force him to obtain treatment; and (5) Moore's claims based on Williams' alleged conduct of prohibiting him to talk to people and Williams' alleged falsification of Moore's parole report. The Court, however, dismisses Moore's condition of confinement claims based on inadequate heat in winter, extreme heat in summer, and pest infestation without prejudice. Also, the Court dismisses without prejudice Moore's failure to protect claim and his claim based on the alleged DHS policy concerning inmates who do not get along. The following claims remain in this lawsuit: (1) Moore's claim based on the alleged excessive force in extracting him from his cell; and (2) the alleged denial and delay of medical care.

## II. Defendants' Involvement

The Liberty Defendants argue that the Court should dismiss Gerald Grishover from Moore's Complaint because Moore only states Grishover's last name under the recitation of the parties. Because Moore fails to make any allegations against Grishover, he has not put Grishover on notice of the claims against him and the grounds upon which they rest. *See Swierkiewicz,* 534 U.S. at 506,*Conley v. Gibson,* 355 U.S. at 47. The Court accordingly grants Defendants' motion to dismiss as to Defendant Grishover, but also grants Moore leave to amend his Complaint concerning any allegations against Grishover.

**\*11** Defendants also argue that some Defendants were not personally involved in one or more of the remaining constitutional claims. For an individual to be liable under Section 1983, he or she must have participated directly in the constitutional violation. *See Palmer v. Marion Cty.,* 327 F.3d 588, 594 (7th Cir.2003)."Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."*Vance v. Peters,* 97 F.3d 987, 991 (7th Cir.1996). In other words, Moore must establish that each Defendant "acquiesced in some demonstrable way in the alleged constitutional violation."*Palmer,* 327 F.3d at 594;*see also Pepper v. Village of Oak Park,* 430 F.3d 809, 810 (7th Cir.2005) ("to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation."). In addition, the doctrine of respondeat superior does not apply to Section 1983 actions. *See Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir.2001). Thus, to be held liable under Section 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference."*Id.*

Nevertheless, in *Antonelli,* the Seventh Circuit held that dismissing a pro se complaint based on the lack of personal involvement is inappropriate when an official's position justifies an inference that the official may have had some direct involvement in the alleged constitutional violation. *Id.* at 1428.Specifically, the Seventh Circuit concluded that an inference of personal involvement was justified against certain senior officials-such as a county

sheriff or prison warden-when the claims alleged "potentially systemic" rather than "clearly localized" constitutional violations. *Id.* at 1428-29.

Moore maintains that the following Defendants were involved in the alleged use of excessive force in extracting him from his cell-Thomas Monahan and Darrell Sanders authorized the use of excessive force; Tarry Williams, Bernard Akpan, Jack Graham, Leslie Hogan, and Tony Humphrey used excessive force; Timothy Burnette video taped the extraction. Further, Moore claims that the following Defendants were involved in the alleged denial and delay in his medical care-Tammy Chasteen, Tarry Williams, Bernard Akpan, and Nathaniel Thompson. Therefore, these Defendants remain in this action.

In addition, Moore alleges that the following Defendants were directly involved in his cell assignment-Lea Chankin, Steve Strock, Shan Jumper, Carol Vance, and Liberty Healthcare Corporation. As discussed, housing Moore in a pest-infested cell that was extremely cold or hot may rise to a constitutional violation, as well as his allegations concerning Defendants' failure to protect him. Because the Court grants Moore leave to amend these claims, it is premature to dismiss any of the individual Defendants at this time.

**\*12** The Court, however, grants Liberty Healthcare's motion to dismiss it as a Defendant in this matter because a private corporation cannot be held vicariously liable for its employees' violations of others' civil rights.*Jackson v. Illinois Medi-Car, Inc., 300 F.3d 760, 766 (7th Cir.2002).* In addition, although private corporations acting under color of state law are treated as municipalities, Moore has failed to allege that any of the remaining constitutional violations occurred as a result of an express custom or policy. *See id.*The Court grants Moore leave to amend his claim against Liberty Healthcare accordingly.

### III. Qualified Immunity

Defendants argue that they are entitled to qualified immunity as to Moore's constitutional claims. *See Saucier v. Katz,* 533 U.S. 194, 201-02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Sain v. Wood,* --- F.3d ----, 2008 WL 80643, at \*6. "[A] complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds."*Alvarado v.*

*Litscher,* 267 F.3d 648, 651-52 (7th Cir.2001). Indeed, a plaintiff need not plead factual allegations that anticipate and also overcome the defense of qualified immunity. *See id.;Doe v. GTE Corp.,* 347 F.3d 655, 657 (7th Cir.2003) ("Affirmative defenses do not justify dismissal under Rule 12(b) (6).").Under the present circumstances, the Court will not address Defendants' qualified immunity arguments at this time, especially in light of Defendants' inadequate briefing on this subject and Moore's present status as a pro se litigant. Defendants may renew their affirmative defense of qualified immunity later in this litigation.

### IV. Non-Service on Certain Defendants

Finally, a review of the Court's docket reveals that Moore has failed to make proof of service on Nathaniel Thompson as required by Rule 4 of the Federal Rules of Civil Procedure. The Federal Rules provide: "If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant...."Fed.R.Civ.P. 4(m).

By Minute Order of November 27, 2006, the Court provided for service on Defendants by the United States Marshals Service. The Marshal, however, filed unexecuted returns of service for Defendant Thompson on April 19, 2007, and October 3, 2007. Both returns indicate that Thompson does not reside at the address given for him and that no one at the residence knew him. Ultimately, it is Moore's responsibility to assure service on Defendants. *See*Fed .R.Civ.P. 4(c)(1). The Court thus orders Moore to show good cause in writing why the Court should not dismiss his Complaint against Defendant Thompson for want of service. The Court will set the deadline once appointed counsel has appeared in the case.

Meanwhile, counsel for Liberty Defendants asserts that Chankin has not been served, yet the Court's docket shows a return of service on August 29, 2007. (*See* R. 108-1.) Counsel must address this matter in further detail. It also appears that the girlfriend of Timothy Burnette accepted service on his behalf on October 31, 2007. (*See* R. 120-1.) Nonetheless, no one has filed an appearance on Burnette's behalf nor is it entirely clear whether service was properly served under Rule 4(e)(2).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2008 WL 111299 (N.D.Ill.)
**(Cite as: Slip Copy)**

Counsel for the DHS Defendants must address this matter.

### *CONCLUSION*

**\*13** For the foregoing reasons, Defendants' motions to dismiss are granted in part and denied in part. The Court grants Moore leave to file an Amended Complaint based on the Defendant's failure to protect him, the pest infestation and extreme heat and cold allegations, whether Defendant Grisphover was personally involved in the alleged constitutional violations, and whether Liberty Healthcare had a custom or policy as discussed above. The Court also orders Moore to show good cause in writing why the Court should not dismiss his allegations against Defendant Thompson for want of service.

N.D.Ill.,2008.
Moore v. Monahan
Slip Copy, 2008 WL 111299 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FILED

MAY 6 2008 *aee*

May 6, 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALLEN L. MOORE,                    )
                                   )
          Plaintiff,               )      Case No.   06 C 6088
                                   )
    v.                             )      Hon.Judge. Amy J. St.Eve
                                   )
THOMAS MONAHAN, et al.,            )      Presiding.
                                   )
          Defendant(s).            )

## MOTION FOR RECONSIDERATION OR IN THE ALTERNATIVE NOTICE OF APPEAL FOR THOSE ISSUE'S DISMISSED BY THIS COURT WITH PREJUDICE AND WITHOUT PREJUDICE

NOW COMES the Plaintiff, **Allen L. Moore**, Acting **Pro-Se** and on behalf of himself, respectfully moves this Honorable Court to Reconsider issue's dismissed with prejudice and without prejudice or in the Alternative accept this motion as plaintiff's Notice of Appeal to preserve the right to appeal at the final disposition of this cause. In support of this motion plaintiff states as follows:

A.    That this Honorable Court has erroneously compared the plaintiff who is a pre-trial detained person with those persons referred to in **Hargett v. Adams**, No. 02 C 1456, 2005 WL 399300,(N.D.Ill. Jan.14,2005). The **Hargett**, court concerned individuals who have been civilly committed under the Illinois Sexually Violent Persons Committment Act, 725 ILCS 207/1 et seq.(the "SVP Act"), and a class of all other similarly situated individuals. Hargett,2005 WL 399300, at*1. The Plaintiff has not had a trial of any kind under the SVP Act, he is still a pre-trial detained person under the SVP Act. Under the SVP Act, an individual who has been convicted ( or found not guilty by reason of insanity) of a sexually violent offense may be detained indefinitely **" at the TDF if he is found to suffer from a mental disorder that makes it substantially probable that he will engage in acts of sexual violence."**725 ILCS 207/40(a). Hargett,2005 WL 399300, at *1. See In re Samuelson, 189 Ill.2d 548, 244 Ill.Dec. 929, 727 N.E.2d 228, 237(Ill.2000)(noting if the court or jury determines

after a trial under, 725 ILCS 207/35(f) that the person named in
the petition is a sexually violent person, the court is required to
enter judgment on that finding and order the defendant to be com-
mitted to the custody of the Department of Human Services " for con-
trol, care and treatment until such time as the person is no longer
a sexually violent person."725 ILCS 207/40(a)(West 1998). The initial
commitment order is to be made following a hearing. The hearing is
to be held as soon as practicable after the circuit court's entry of
judgment. In the order, "the court must specify either institutional
care in a secure facility or conditional release." 725 ILCS 207/40
(b)(2)(West 1998). "If the defendant is committed to institutional
care, the Department of Human Services is required to place the defen-
dant in a facility provided by the Department of Corrections." 725
ILCS 207/50 (West 1998). In re Samuelson, 727 N.E.2d 228 at * 5(Cit-
ations omitted). In this instant case, Plaintiff was petitioned under
the SVP Act, and was to be held in accordance with 725 ILCS 207/30(a)
in a approved facility by the Department (DHS)pending a trial under
725 ILCS 207/35(f) of the SVP Act.See Attached Copy of the SVP Act.
The plaintiff was unlawfully held at the Illinois Department of Human
Services, Treatment and Detention facility in Joliet, Illinois, be-
cause that facility was a Secured facility provided by the Department
of Corrections for the placement of those persons who was found by
a court or jury to be sexually violent persons, and was afforded a
hearing in accordance with 725 ILCS 207/40(b)(2) before placement in
said facility.See 725 ILCS 207/50(a) which states in relevent part:
The Department shall place a person committed to a secure facility
under paragraph (b)(2) of Section 40 of this Act at a facility pro-
vided by the Department of Corrections under subsection (b) of this
Section. See 725 ILCS 207/50(b) The Department may enter into an agree-
ment with the Department of Corrections for the provision of a sec-
ure facility for persons committed under paragraph (b)(2) of Section
40 of this Act to a facility. The Department shall operate the fac=
ility provided by the Department of Corrections under this subsec-
tion and shall provide by rule for the nature of the facility, the
level of care to be provided in the facility, and the custody and
discipline of persons placed in the facility. The Plaintiff has not
had any trial by the court or jury, there has not been any determi-

nation that the plaintiff suffer's from a mental disorder.

    **B.**    An adminisrative agency must comply with the procedures and
rules promulgated by the legislature.(Ragano v. Civil Service Comm'n
(1980), 80 Ill.App.3d 523, 527, 35 Ill.Dec. 960, 963, 400 N.E.2d 97,
100.) The Illinois legislature did not give the Department (DHS)
lawful authority to effectively commit the plaintiff without the
benefit of a trial, and thereby allow the trial court under the
Act ask questions later; An approved detention facility under
Subsection 725 ILCS 207/30(a) does not give Defendant's the autho-
rity to subject the plaintiff to rules for the nature of the fac-
ility, and the level of care and the custody and discipline, Sub-
section 725 ILCS 207/50(b) only gives the Defendants this authority.
An adminstrative agency derives its power soley from the statute
by which it was created.(Illinois Power Co. v. Illinois Pollution
Control Board (1985), 137 Ill.App.3d 449, 452, 92 Ill.Dec. 167,
169, 484 N.E.2d 898, 900.) The language of the Illinois legislature
is clear, after the Court or Jury determines after a trial that an
individual is a sexually violent person, the court **shall** order the
person to be committed to the custody of the Department for control,
care and treatment, 725 ILCS 207/40(a), the Court then must hold
a hearing to determine if the person will be placed in a secure
facility or conditional, the Court must specify first, institutional
care in a secure facility or conditional release before a person
can be placed in a secur facility by the Department (DHS) under
Subsection 40 (b)(2). Plaintiff is not a detained person as described
under **Subsection 725 ILCS 207/40(b)(4)** this detained person was
committed as a sexually violent person, the Department was given
custody, care, control and treatment of this detained person under
**paragraph (a) of Section 40 of the Act,** this detained person also
received a hearing under 725 ILCS 207/40 (b)(2) and the court specified
in the court's order conditional release under Section 40(b)(4),
An order for conditional release places the person in the custody
and control of the Department, but if the person is subseqquently
returned to the Department for a revocation hearing under **Subsection
40 (b)(4)** that detained person may be detained in a **jail, in a hos-
pital or treatment facility,** pending the revocation hearing. This

detained person is the same detained person referred to under Sub-
section 725 ILCS 207/50(c), which provide's this detained person
can be held in a Secured facility. The plaintiff is a pre-trial
detained person who was suppose to be held under Subsection 725
ILCS 207/30(a) until he had a trial, Defendant's had no lawful
authority to place him in institutional care in a secure facility
provided by the Department of Corrections and subjected him to
punishment because he refused to give up his right not to sign
a consent to sex offenders treatment, Defendant's deliberately
housed the plaintiff in animal like living conditions where his
cell was roach-infested year round plagued with wasp, spiders
and bees, no srceens on the windows to protect plaintiff from
the insects, his cell was inadequately heated in the winter months,
and extremely hot in the summer months, he was forced to drink
water that was foul and contained pollutants that was potentially
poisonous to plaintiff's health, his cell was very small and
contained a double bunk, toilet, sink, with no chair or table,
Defendant's acted deliberately and with malicious intent because
they intentally re-assigned the plaintiff to another cell in the
old building that would have been worse than conditions just ex-
plained, yet with a difference that plaintiff was being forced to
cell with a person he notified the Defendant's he could not get
along with, and out weight the plaintiff by 80 pounds. In Hargett,
which dealt with persons who are committed as sexually violent
person, judge Leinenweber, ruled Defendant's must respect a pat-
ients right to refuse treatment. Hargett, 2005 WL 399300, at *6.
The plaintiff is not a patient, because he has not been committed
as an SVP, yet if the Defendant's must respect a patients right
to refuse treatment, then they should have respected the plaintiff's
right to refuse treatment. See Ehrlich v. Mantzke, No 01 C 7449,
2002 WL 265177(N.D.Ill.Feb.25,2002). The Ehrlich, court concluded
that Ehrlich had not been adjudged a "Sexually Violent Person,"
and he was not receiving any treatment, so Defendants had no
legitimate therapeutic interest in confiscating his materials.
Ehrlich, 2002 WL 265177, at *6. Just as Ehrlich had not been
found to be a sexually violent person, and was not a participant

-4-of-6-

in treatment, defendants had no legitimate therapeutic interest,
the plaintiff has not been adjudged a sexually violent person,
Defendant's had no lawful authority to exercise any medical or
professional judgment over the plaintiff, plaintiff was not
suppose to even be at the secured facility.

   C.   Under **Hargett**, the Honorable judge Harry D. Leinenweber,
ruled in regards to persons committed under the SVP Act:

> After a STA makes the initial SMS decision, the patient
> is directed to his room, and confined within(i.e., **the
> door to his personal room is locked**). The patient is
> <u>not restrained within his room</u>(i.e., **five-point restraints
> or other devices are not used to restrain the patient.**
> Once the patient is on SMS, the **nurse or clinician** is
> notified to perform an initial **face-to-face medical or
> psychiatrict screen or assessment** for suicidal or
> psychotic symptoms **within one hour** of placement on **SMS**.
> "If the patient is not showing suicidal ideation or
> self-injurious behavior, **he typically** retains the **"right"**
> to use all personal items in his room, including, if
> available, the television, music players, and books.
> The vast majority of patients placed on **SMS** comply with
> orders to go to their room and **no staff physical inter-
> vention is typically required to place the patient in his
> room, "and restraints are rarely, if ever, used."**

**Hargett, 2005 WL 399300, at \*3-5.** Clearly as can be seen Defendants
only have authority to go into a patients cell and confiscate his
personal property after he has been given a face-to-face medical
or psychiatric screen or assessment, and it is determined that the
person is showing suicidal ideation or self-injurious behavoir,
the Plaintiff is not a patient and was not even suppose to be placed
in the Secured facility, but Defendants entered his cell malici-
iously to cause the plaintiff more hardship than described in his
complaint, by confiscating all the plaintiff's personal property
by way of excessive force and moved his personal property into
the cell with the very person that plaintiff had informed the
Defendants that he the plaintiff could not get along with, Defen-
dants deliberately refused to provide the plaintiff with a written
receipt for his personal property to prevent the plaintiff from
litigating against them, plaintiff never received a face-to-face
medical or psychiatric screen or assessment for suicidal or psy-
chotic symtoms within one hour of placement on SMS. The Defendants

ignored their own policy and procedures, this Honorable Court
errored in dismissing these claims concerning the lost of the plain-
tiff's leegal mail, because although the plaintiff is represented
by counsel in the civil commitment proceedings, he has an absolute
right to participate and assist in his own defense, and the lost
of irreplacable familiy photographs the court errored in dismissing
this claim, because even a person who has been committed as an
SVP and placed on special management status (SMS) had a right to
retain his personal property, Defendants could not just take his
prersonal property for malicious reasons, Plaintiff was not given
any property receipts for his personal property, this was done on
purpose by Defendants to prevent the plaintiff from having any
proof, plaintiff can-not seek relief in the Illinois Court of
Claims as this court suggest, because Defendants refused to give
him receipts for his personal property, the court also failed to
address the matter of plaintiff's clothing and food items that
where lost in addition to his lost familiy photo's and legal mail,
See Ex. D-1., attached grievance complaint to Pl. Memo in Opposi-
tion to DHS Def, Mt.to Dis. Also, See **McCready v. eBay, Inc.,** 453
**F.3d 882, 891(7th.Cir.2006)**(Federal Rules of Civil Procedure 10(c)
provides that a copy of any written instrument which is an **exhibit**
to a pleading is a part thereof for all purposes. ·

D.   This Court errored by dismising Defendant Shawndo Cleveland
from this action, plaintiff alleged in his complaint that this Defen-
dant entered his cell in riot gear, used excessive force against
him to unlawfully take plaintiff's personal property from him.

E.   This Court ordered that the plaintiff has to show cause in
writing why the court should not dismiss his complaint against Def-
endant Nathaniel Thompson for want of Service.See Memo and Opinion,
p.g. 21-22., This Honorable Court should not dismiss defendant Thom-
pson from this action, although the Court ordered the U.S. Marshal
Service to serve summons on all Defendants November 27,2006, plain-
tiff was notified by the Marshal service that certain defendants
could not be found, plaintiff motioned this court May 17,2007, the
court denied this motion and re-issued a order for Defendant to be
served May 22,2007.(See **dkt.no.57**),**Exhibit B.**

F.   The proceedings under the sexually violent persons Act are civil in nature, the plaintiff is not confined for any criminal offense, he has not been found by any court or jury to be a sexually violent person, plaintiff was suppose to be detained pending trial in accordance with 725 ILCS 207/30(a) at a facility approved by the Department, a facility approved by the Department does not give the Defendants any lawful authority to impose rules or disciplinary punishment upon the plaintiff, the only provision of the Act which give's the Defendants the lawful authority to impose's rules and disciplinary punishment upon an individual is under 725 ILCS 207/50(b), the legislature was clear about what persons was to be placed in a secure facility provided by the Department of Corrections, and that would be a person found by a court or jury to be a sexually violent person, and the court shall give the person a hearing before placement in said facility under 725 ILCS 207/40 (b)(2), Defendants or this Honorable Court can-not render any part of this Act meaning-less, The Defendants unlawfully held the plaintiff in the Illinois Department of Human Services, Treatment and Detention Facility which was located in Joliet, Illinois and was a Secured facility provided by the Department of Corrections under Section 50 (b) for persons committed under Section 40 (b)(2) and deliberately violated his United States Constitutional rights to due process of law, which amounts to a form of kidnap, Defendants subjected plaintiff to all the claims alleged in his complaint, and with all due re-spect to this Honorable Court, the Court's dismissal with and without prejudice of certain claims alleged by the plaintiff was insensi-tive, because the court used compared the plaintiff to persons who have been adjudged a sexually violent person and who the court ordered to be placed in a secured facility after their commitment, and case's which dealt with prisoner's, the plaintiff is not ser-ving any prison sentence, plaintiff is a civilian. If plaintiff was not held unlawfully at the Secured facility provided by the Depart-ment of Correction, none of his U.S. Constitutional right's would have been violated as described in plaintiff's complaint.

WHEREFORE, for all the above stated reasons, the plaintiff Allen L. Moore, prays this Honorable Court will Reconsider all claims

dismissed by this Court with prejudice and without prejudice on
January 10, 2008, or in the Alternative accept this motion as
plaintiff's Notice of Appeal at the final disposition of this cause.

(Date: _April 28, 2008_ )

Respectfully Submitted By:
   Allen L. Moore

_Allen L. Moore_

Allen L. Moore, Acting Pro-Se
Illinois Dept. of Human Services
Treatment and Detention Facility
R.R. # 1, Box 6-A
Rushville, IL 62681

This procedure has been self
notarized under the penalty of
perjury in accordance with Title
28, U.S.C.A. §1746, §1621. This
25th day of April. With my right
thumb print I hereby mark as my
signature.



Exhibit A

court for an order authorizing the conditional release of any person committed to him under this Act and the court may enter an order permitting such person to go at large subject to such conditions and such supervision by the Director as in the opinion of the court will adequately protect the public. In the event the person violates any of the conditions of such order, the court shall revoke such conditional release and recommit the person pursuant to Section 5–6–4 of the Unified Code of Corrections [1] under the terms of the original commitment.

Laws 1938, First Sp.Sess., p. 28, § 10, added by Laws 1955, p. 1144, § 1, eff. July 7, 1955.  Amended by Laws 1963, p. 2984, § 1, eff. Aug. 16, 1963;  P.A. 76-451, § 1, eff. Jan. 1, 1970;  P.A. 77-2477, § 1, eff. Jan. 1, 1973.

Formerly Ill.Rev.Stat.1991, ch. 38, ¶105–10, transferred from Ill.Rev.Stat.1961, ch. 38, ¶825c.

[1] 730 ILCS 5/5–6–4.

### 205/11.  Partial invalidity

§ 11.  If any provision of this Act, or the application of any provision to any person or circumstance, is held invalid, the remainder of the Act, and the application of such provision to other persons or circumstances, shall not be affected thereby.

Laws 1938, First Sp.Sess., p. 28, § 11, added by Laws 1955, p. 1144, § 1, eff. July 7, 1955.

Formerly Ill.Rev.Stat.1991, ch. 38, ¶105–11, transferred from Ill.Rev.Stat.1961, ch. 38, ¶825d.

### 205/12.  Custody transferred from Department of Public Safety to Director of Corrections

§ 12.  Persons heretofore committed to the Department of Public Safety are deemed transferred and committed to the custody of the Director of Corrections.

Laws 1938, First Sp.Sess., p. 28, § 12, added by Laws 1955, p. 1144, § 1, eff. July 7, 1955.  Amended by P.A. 76-451, § 1, eff. Jan. 1, 1970.

Formerly Ill.Rev.Stat.1991, ch. 38, ¶105–12, transferred from Ill.Rev.Stat.1961, ch. 38, ¶825e.

## ACT 207.  SEXUALLY VIOLENT PERSONS COMMITMENT ACT

Section
207/1.    Short title.
207/5.    Definitions.
207/10.   Notice to the Attorney General and State's Attorney.
207/15.   Sexually violent person petition; contents; filing.
207/20.   Civil nature of proceedings.
207/25.   Rights of persons subject to petition.
207/30.   Detention;  probable cause hearing;  transfer for examination.
207/35.   Trial.
207/40.   Commitment.
207/45.   Deoxyribonucleic acid analysis requirements.
207/50.   Secure facility for sexually violent persons.
207/55.   Periodic reexamination;  report.
207/60.   Petition for conditional release.
207/65.   Petition for discharge;  procedure.
207/70.   Additional discharge petitions.
207/75.   Notice concerning conditional release, discharge, escape, death, or court-ordered change in the custo-

Section
          dy status of a detainee or civilly committed sexually violent person.
207/80.   Applicability.
207/90.   Committed persons ability to pay for services.
207/99.   Effective date.

### 207/1.  Short title

§ 1.  Short title.  This Act may be cited as the Sexually Violent Persons Commitment Act.

P.A. 90-40, § 1, eff. Jan. 1, 1998.

#### Title of Act:

An Act in relation to sexually violent persons.  P.A. 90-40, approved June 30, 1997, eff. Jan. 1, 1998.

### 207/5.  Definitions

§ 5.  Definitions.  As used in this Act, the term:

(a) "Department" means the Department of Human Services.

(b) "Mental disorder" means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence.

(c) "Secretary" means the Secretary of Human Services.

(d) "Sexually motivated" means that one of the purposes for an act is for the actor's sexual arousal or gratification.

(e) "Sexually violent offense" means any of the following:

(1) Any crime specified in Section 12-13, 12-14, 12-14.1, or 12-16 of the Criminal Code of 1961; [1] or

(1.5) Any former law of this State specified in Section 11-1 (rape), 11-3 (deviate sexual assault), 11-4 (indecent liberties with a child) or 11-4 (aggravated indecent liberties with a child) of the Criminal Code of 1961; [2] or

(2) First degree murder, if it is determined by the agency with jurisdiction to have been sexually motivated; or

(3) Any solicitation, conspiracy or attempt to commit a crime under paragraph (e)(1) or (e)(2) of this Section.

(f) "Sexually violent person" means a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of a sexually violent offense by reason of insanity and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence.

P.A. 90-40, § 5, eff. Jan. 1, 1998.  Amended by P.A. 90-793, § 20, eff. Aug. 14, 1998;  P.A. 91-875, § 5, eff. June 30, 2000.

[1] 720 ILCS 5/12-13, 720 ILCS 5/12-14, 720 ILCS 5/12-14.1 or 720 ILCS 5/12-16.

[2] 720 ILCS 5/1-1 et seq.

### 207/10.  Notice to the Attorney General and State's Attorney

§ 10.  Notice to the Attorney General and State's Attorney.

(a) In this Act, "agency with jurisdiction" means the agency with the authority or duty to release or discharge the person.

(b) If an agency with jurisdiction has control or custody over a person who may meet the criteria for commitment as a sexually violent person, the agency with jurisdiction shall inform the Attorney General and the State's Attorney in a position to file a petition under paragraph (a)(2) of Section 15

of this Act regarding the person as soon as possible beginning 3 months prior to the applicable date of the following:

(1) The anticipated release from imprisonment or the anticipated entry into mandatory supervised release of a person who has been convicted of a sexually violent offense.

(2) The anticipated release from a Department of Corrections correctional facility or juvenile correctional facility of a person adjudicated delinquent under Section 5–20 of the Juvenile Court Act of 1987 [1] (now repealed) or found guilty under Section 5–620 of that Act, on the basis of a sexually violent offense.

(3) The discharge or conditional release of a person who has been found not guilty of a sexually violent offense by reason of insanity under Section 5–2–4 of the Unified Code of Corrections.[2]

(c) The agency with jurisdiction shall provide the Attorney General and the State's Attorney with all of the following:

(1) The person's name, identifying factors, anticipated future residence and offense history;

(2) A comprehensive evaluation of the person's mental condition, the basis upon which a determination has been made that the person is subject to commitment under subsection (b) of Section 15 of this Act and a recommendation for action in furtherance of the purposes of this Act. The evaluation shall be conducted in conformance with the standards developed under the Sex Offender Management Board Act and by an evaluator approved by the Board; and

(3) If applicable, documentation of any treatment and the person's adjustment to any institutional placement.

(d) Any agency or officer, employee or agent of an agency is immune from criminal or civil liability for any acts or omissions as the result of a good faith effort to comply with this Section.

P.A. 90–40, § 10, eff. Jan. 1, 1998. Amended by P.A. 90–793, § 20, eff. Aug. 14, 1998; P.A. 91–357, § 246, eff. July 29, 1999; P.A. 93–616, § 20, eff. Jan. 1, 2004.

[1] 705 ILCS 405/5–20.

[2] 730 ILCS 5/5–2–4.

## 207/15. Sexually violent person petition; contents; filing

§ 15. Sexually violent person petition; contents; filing.

(a) A petition alleging that a person is a sexually violent person may be filed by:

(1) The Attorney General, at the request of the agency with jurisdiction over the person, or on his or her own motion. If the Attorney General, after consulting with and advising the State's Attorney of the county referenced in paragraph (a)(2) of this Section, decides to file a petition under this Section, he or she shall file the petition before the date of the release or discharge of the person or within 30 days of placement onto parole or mandatory supervised release for an offense enumerated in paragraph (e) of Section 5 of this Act.

(2) If the Attorney General does not file a petition under this Section, the State's Attorney of the county in which the person was convicted of a sexually violent offense, adjudicated delinquent for a sexually violent offense or found not guilty of or not responsible for a sexually violent offense by reason of insanity, mental disease, or mental defect may file a petition.

(3) The Attorney General and the State's Attorney referenced in paragraph (a)(2) of this Section jointly.

(b) A petition filed under this Section shall allege that all of the following apply to the person alleged to be a sexually violent person:

(1) The person satisfies any of the following criteria:

(A) The person has been convicted of a sexually violent offense;

(B) The person has been found delinquent for a sexually violent offense; or

(C) The person has been found not guilty of a sexually violent offense by reason of insanity, mental disease, or mental defect.

(2) (Blank).

(3) (Blank).

(4) The person has a mental disorder.

(5) The person is dangerous to others because the person's mental disorder creates a substantial probability that he or she will engage in acts of sexual violence.

(b–5) The petition must be filed:

(1) No more than 90 days before discharge or entry into mandatory supervised release from a Department of Corrections correctional facility for a sentence that was imposed upon a conviction for a sexually violent offense, or for a sentence that is being served concurrently or consecutively with a sexually violent offense, and no more than 30 days after the person's entry into parole or mandatory supervised release; or

(2) No more than 90 days before discharge or release:

(A) from a Department of Corrections juvenile correctional facility if the person was placed in the facility for being adjudicated delinquent under Section 5–20 of the Juvenile Court Act of 1987 [1] or found guilty under Section 5–620 of that Act [2] on the basis of a sexually violent offense; or

(B) from a commitment order that was entered as a result of a sexually violent offense.

(c) A petition filed under this Section shall state with particularity essential facts to establish probable cause to believe the person is a sexually violent person. If the petition alleges that a sexually violent offense or act that is a basis for the allegation under paragraph (b)(1) of this Section was an act that was sexually motivated as provided under paragraph (e)(2) of Section 5 of this Act, the petition shall state the grounds on which the offense or act is alleged to be sexually motivated.

(d) A petition under this Section shall be filed in either of the following:

(1) The circuit court for the county in which the person was convicted of a sexually violent offense, adjudicated delinquent for a sexually violent offense or found not guilty of a sexually violent offense by reason of insanity, mental disease or mental defect.

(2) The circuit court for the county in which the person is in custody under a sentence, a placement to a Department of Corrections correctional facility or juvenile correctional facility, or a commitment order.

P.A. 90–40, § 15, eff. Jan. 1, 1998. Amended by P.A. 90–793, § 20, eff. Aug. 14, 1998; P.A. 91–227, § 5, eff. Jan. 1, 2000; P.A. 91–357, § 246, eff. July 29, 1999; P.A. 92–16, § 90.5, eff. June 28, 2001.

[1] 705 ILCS 405/5–20.

[2] 705 ILCS 405/5–620.

**725 ILCS 207/20**   CRIMINAL PROCEDURE   **682**

**207/20. Civil nature of proceedings**

§ 20. Civil nature of proceedings. The proceedings under this Act shall be civil in nature. The provisions of the Civil Practice Law,[1] and all existing and future amendments of that Law shall apply to all proceedings hereunder except as otherwise provided in this Act.

P.A. 90-40, § 20, eff. Jan. 1, 1998.

[1] 735 ILCS 5/2-101 et seq.

**207/25. Rights of persons subject to petition**

§ 25. Rights of persons subject to petition.

(a) Any person who is the subject of a petition filed under Section 15 of this Act shall be served with a copy of the petition in accordance with the Civil Practice Law.[1]

(b) The circuit court in which a petition under Section 15 of this Act is filed shall conduct all hearings under this Act. The court shall give the person who is the subject of the petition reasonable notice of the time and place of each such hearing. The court may designate additional persons to receive these notices.

(c) Except as provided in paragraph (b)(1) of Section 65 and Section 70 of this Act, at any hearing conducted under this Act, the person who is the subject of the petition has the right:

(1) To be present and to be represented by counsel. If the person is indigent, the court shall appoint counsel.

(2) To remain silent.

(3) To present and cross-examine witnesses.

(4) To have the hearing recorded by a court reporter.

(d) The person who is the subject of the petition, the person's attorney, the Attorney General or the State's Attorney may request that a trial under Section 35 of this Act be to a jury. A verdict of a jury under this Act is not valid unless it is unanimous.

(e) Whenever the person who is the subject of the petition is required to submit to an examination under this Act, he or she may retain experts or professional persons to perform an examination. If the person retains a qualified expert or professional person of his or her own choice to conduct an examination, the examiner shall have reasonable access to the person for the purpose of the examination, as well as to the person's past and present treatment records and patient health care records. If the person is indigent, the court shall, upon the person's request, appoint a qualified and available expert or professional person to perform an examination. Upon the order of the circuit court, the county shall pay, as part of the costs of the action, the costs of a court-appointed expert or professional person to perform an examination and participate in the trial on behalf of an indigent person.

P.A. 90-40, § 25, eff. Jan. 1, 1998. Amended by P.A. 93-616, § 20, eff. Jan. 1, 2004; P.A. 93-970, § 5, eff. Aug. 20, 2004.

[1] 735 ILCS 5/2-101 et seq.

P.A. 93-970 incorporated the amendment by P.A. 93-616.

**207/30. Detention; probable cause hearing; transfer for examination**

§ 30. Detention; probable cause hearing; transfer for examination.

(a) Upon the filing of a petition under Section 15 of this Act, the court shall review the petition to determine whether to issue an order for detention of the person who is the subject of the petition. The person shall be detained only if there is cause to believe that the person is eligible for commitment under subsection (f) of Section 35 of this Act. A person detained under this Section shall be held in a facility approved by the Department. If the person is serving a sentence of imprisonment, is in a Department of Corrections correctional facility or juvenile correctional facility or is committed to institutional care, and the court orders detention under this Section, the court shall order that the person be transferred to a detention facility approved by the Department. A detention order under this Section remains in effect until the person is discharged after a trial under Section 35 of this Act or until the effective date of a commitment order under Section 40 of this Act, whichever is applicable.

(b) Whenever a petition is filed under Section 15 of this Act, the court shall hold a hearing to determine whether there is probable cause to believe that the person named in the petition is a sexually violent person. If the person named in the petition is in custody, the court shall hold the probable cause hearing within 72 hours after the petition is filed, excluding Saturdays, Sundays and legal holidays. The court may grant a continuance of the probable cause hearing for no more than 7 additional days upon the motion of the respondent, for good cause. If the person named in the petition has been released, is on parole, is on mandatory supervised release, or otherwise is not in custody, the court shall hold the probable cause hearing within a reasonable time after the filing of the petition. At the probable cause hearing, the court shall admit and consider all relevant hearsay evidence.

(c) If the court determines after a hearing that there is probable cause to believe that the person named in the petition is a sexually violent person, the court shall order that the person be taken into custody if he or she is not in custody and shall order the person to be transferred within a reasonable time to an appropriate facility for an evaluation as to whether the person is a sexually violent person. If the person who is named in the petition refuses to speak to, communicate with, or otherwise fails to cooperate with the examining evaluator from the Department of Human Services or the Department of Corrections, that person may only introduce evidence and testimony from any expert or professional person who is retained or court-appointed to conduct an examination of the person that results from a review of the records and may not introduce evidence resulting from an examination of the person. Notwithstanding the provisions of Section 10 of the Mental Health and Developmental Disabilities Confidentiality Act,[1] all evaluations conducted pursuant to this Act and all Illinois Department of Corrections treatment records made pursuant to this Act, including the probable cause hearing and the trial.

If the court determines that probable cause does not exist to believe that the person is a sexually violent person, the court shall dismiss the petition.

(d) The Department shall promulgate rules that provide the qualifications for persons conducting evaluations under subsection (c) of this Section.

(e) If the person named in the petition claims or appears to be indigent, the court shall, prior to the probable cause hearing under subsection (b) of this Section, appoint counsel.

P.A. 90-40, § 30, eff. Jan. 1, 1998. Amended by P.A. 90-793, § 20, eff. Aug. 14, 1998; P.A. 92-415, § 15, eff. Aug. 17, 2001; P.A. 93-616, § 20, eff. Jan. 1, 2004; P.A. 93-970, § 5, eff. Aug. 20, 2004.

[1] 740 ILCS 110/10.

P.A. 93-970 incorporated the amendment by P.A. 93-616.

**683**

**207/35.**

§ 35.

(a) A tri[...] subject of a [...] violent perso[...] the date of the[...] this Act. Dela[...] unless he or [...] demand for t[...] Delay occasion[...] time of the de[...] tried. If the d[...] period within [...] continue the [...] than an additio[...] The court may [...] cause upon it[...] stipulation of [...] granted shall [...] Criminal Proced[...]

(b) At the tr[...] introduce evidenc[...] any number o[...] if any, were int[...] testimony from [...] evaluator and t[...] gist.

(c) The perso[...] person's attorne[...] ney may reques[...] A request for a [...] within 10 days [...] tion 30 of this A[...] by the court. [...] Attorney Genera[...] ble, may withdr[...]

(d) (1) At a tri[...] er has the burde[...] beyond a reason[...]

(2) If the St[...] or act that for[...] was sexually [...] Section 5 of thi[...] a reasonable d[...] was sexually m[...]

(e) Evidence t[...] petition under S[...] committed sexua[...] offense or act on[...] to establish beyon[...] mental disorder.

(f) If the court [...] the subject of a p[...] person, the court [...] shall commit the [...] Act. If the court [...] doubt that the pe[...] shall dismiss the [...] released unless he[...] tion.

(g) A judgmen[...] tion on the findin[...] petition under S[...]

## 207/35.  Trial

### § 35.  Trial.

(a) A trial to determine whether the person who is the subject of a petition under Section 15 of this Act is a sexually violent person shall commence no later than 120 days after the date of the probable cause hearing under Section 30 of this Act.  Delay is considered to be agreed to by the person unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record. Delay occasioned by the person temporarily suspends for the time of the delay the period within which a person must be tried.  If the delay occurs within 21 days after the end of the period within which a person must be tried, the court may continue the cause on application of the State for not more than an additional 21 days beyond the period prescribed. The court may grant a continuance of the trial date for good cause upon its own motion, the motion of any party or the stipulation of the parties, provided that any continuance granted, shall be subject to Section 103–5 of the Code of Criminal Procedure of 1963.[1]

(b) At the trial on the petition it shall be competent to introduce evidence of the commission by the respondent of any number of crimes together with whatever punishments, if any, were imposed.  The petitioner may present expert testimony from both the Illinois Department of Corrections evaluator and the Department of Human Services psychologist.

(c) The person who is the subject of the petition, the person's attorney, the Attorney General or the State's Attorney may request that a trial under this Section be by a jury. A request for a jury trial under this subsection shall be made within 10 days after the probable cause hearing under Section 30 of this Act.  If no request is made, the trial shall be by the court.  The person, the person's attorney or the Attorney General or State's Attorney, whichever is applicable, may withdraw his or her request for a jury trial.

(d) (1) At a trial on a petition under this Act, the petitioner has the burden of proving the allegations in the petition beyond a reasonable doubt.

(2) If the State alleges that the sexually violent offense or act that forms the basis for the petition was an act that was sexually motivated as provided in paragraph (e)(2) of Section 5 of this Act, the State is required to prove beyond a reasonable doubt that the alleged sexually violent act was sexually motivated.

(e) Evidence that the person who is the subject of a petition under Section 15 of this Act was convicted for or committed sexually violent offenses before committing the offense or act on which the petition is based is not sufficient to establish beyond a reasonable doubt that the person has a mental disorder.

(f) If the court or jury determines that the person who is the subject of a petition under Section 15 is a sexually violent person, the court shall enter a judgment on that finding and shall commit the person as provided under Section 40 of this Act.  If the court or jury is not satisfied beyond a reasonable doubt that the person is a sexually violent person, the court shall dismiss the petition and direct that the person be released unless he or she is under some other lawful restriction.

(g) A judgment entered under subsection (f) of this Section on the finding that the person who is the subject of a petition under Section 15 is a sexually violent person is

interlocutory to a commitment order under Section 40 and is reviewable on appeal.

P.A. 90–40, § 35, eff. Jan. 1, 1998.  Amended by P.A. 91–875, § 5, eff. June 30, 2000;  P.A. 92–415, § 15, eff. Aug. 17, 2001. 1 725 ILCS 5/103–5.

## 207/40.  Commitment

### § 40.  Commitment.

(a) If a court or jury determines that the person who is the subject of a petition under Section 15 of this Act is a sexually violent person, the court shall order the person to be committed to the custody of the Department for control, care and treatment until such time as the person is no longer a sexually violent person.

(b)(1) The court shall enter an initial commitment order under this Section pursuant to a hearing held as soon as practicable after the judgment is entered that the person who is the subject of a petition under Section 15 is a sexually violent person.  If the court lacks sufficient information to make the determination required by paragraph (b)(2) of this Section immediately after trial, it may adjourn the hearing and order the Department to conduct a predisposition investigation or a supplementary mental examination, or both, to assist the court in framing the commitment order.  A supplementary mental examination under this Section shall be conducted in accordance with Section 3–804 of the Mental Health and Developmental Disabilities Code.[1]

(2) An order for commitment under this Section shall specify either institutional care in a secure facility, as provided under Section 50 of this Act, or conditional release.  In determining whether commitment shall be for institutional care in a secure facility or for conditional release, the court shall consider the nature and circumstances of the behavior that was the basis of the allegation in the petition under paragraph (b)(1) of Section 15, the person's mental history and present mental condition, where the person will live, how the person will support himself or herself, and what arrangements are available to ensure that the person has access to and will participate in necessary treatment.  All treatment, whether in institutional care, in a secure facility, or while on conditional release, shall be conducted in conformance with the standards developed under the Sex Offender Management Board Act and conducted by a treatment provider approved by the Board.  The Department shall arrange for control, care and treatment of the person in the least restrictive manner consistent with the requirements of the person and in accordance with the court's commitment order.

(3) If the court finds that the person is appropriate for conditional release, the court shall notify the Department. The Department shall prepare a plan that identifies the treatment and services, if any, that the person will receive in the community.  The plan shall address the person's need, if any, for supervision, counseling, medication, community support services, residential services, vocational services, and alcohol or other drug abuse treatment.  The Department may contract with a county health department, with another public agency or with a private agency to provide the treatment and services identified in the plan.  The plan shall specify who will be responsible for providing the treatment and services identified in the plan. The plan shall be presented to the court for its approval within 60 days after the court finding that the person is appropriate for conditional release, unless the Department and the person to be released request additional time to

**CRIMINAL PROCEDURE**                    **684**

develop the plan. The conditional release program operated under this Section is not subject to the provisions of the Mental Health and Developmental Disabilities Confidentiality Act.[2]

(4) An order for conditional release places the person in the custody and control of the Department. A person on conditional release is subject to the conditions set by the court and to the rules of the Department. Before a person is placed on conditional release by the court under this Section, the court shall so notify the municipal police department and county sheriff for the municipality and county in which the person will be residing. The notification requirement under this Section does not apply if a municipal police department or county sheriff submits to the court a written statement waiving the right to be notified. If the Department alleges that a released person has violated any condition or rule, or that the safety of others requires that conditional release be revoked, he or she may be taken into custody under the rules of the Department.

At any time during which the person is on conditional release, if the Department determines that the person has violated any condition or rule, or that the safety of others requires that conditional release be revoked, the Department may request the Attorney General or State's Attorney to request the court to issue an emergency ex parte order directing any law enforcement officer to take the person into custody and transport the person to the county jail. The Department may request, or the Attorney General or State's Attorney may request independently of the Department, that a petition to revoke conditional release be filed. When a petition is filed, the court may order the Department to issue a notice to the person to be present at the Department or other agency designated by the court, order a summons to the person to be present, or order a body attachment for all law enforcement officers to take the person into custody and transport him or her to the county jail, hospital, or treatment facility. The Department shall submit a statement showing probable cause of the detention and a petition to revoke the order for conditional release to the committing court within 48 hours after the detention. The court shall hear the petition within 30 days, unless the hearing or time deadline is waived by the detained person. Pending the revocation hearing, the Department may detain the person in a jail, in a hospital or treatment facility. The State has the burden of proving by clear and convincing evidence that any rule or condition of release has been violated, or that the safety of others requires that the conditional release be revoked. If the court determines after hearing that any rule or condition of release has been violated, or that the safety of others requires that conditional release be revoked, it may revoke the order for conditional release and order that the released person be placed in an appropriate institution until the person is discharged from the commitment under Section 65 of this Act or until again placed on conditional release under Section 60 of this Act.

(5) An order for conditional release places the person in the custody, care, and control of the Department. The court shall order the person be subject to the following rules of conditional release, in addition to any other conditions ordered, and the person shall be given a certificate setting forth the conditions of conditional release. These conditions shall be that the person:

(A) not violate any criminal statute of any jurisdiction;

(B) report to or appear in person before such person or agency as directed by the court and the Department;

(C) refrain from possession of a firearm or other dangerous weapon;

(D) not leave the State without the consent of the court or, in circumstances in which the reason for the absence is of such an emergency nature, that prior consent by the court is not possible without the prior notification and approval of the Department;

(E) at the direction of the Department, notify third parties of the risks that may be occasioned by his or her criminal record or sexual offending history or characteristics, and permit the supervising officer or agent to make the notification requirement;

(F) attend and fully participate in assessment, treatment, and behavior monitoring including, but not limited to, medical, psychological or psychiatric treatment specific to sexual offending, drug addiction, or alcoholism, to the extent appropriate to the person based upon the recommendation and findings made in the Department evaluation or based upon any subsequent recommendations by the Department;

(G) waive confidentiality allowing the court and Department access to assessment or treatment results or both;

(H) work regularly at a Department approved occupation or pursue a course of study or vocational training and notify the Department within 72 hours of any change in employment, study, or training;

(I) not be employed or participate in any volunteer activity that involves contact with children, except under circumstances approved in advance and in writing by the Department officer;

(J) submit to the search of his or her person, residence, vehicle, or any personal or real property under his or her control at any time by the Department;

(K) financially support his or her dependents and provide the Department access to any requested financial information;

(L) serve a term of home confinement, the conditions of which shall be that the person:

(i) remain within the interior premises of the place designated for his or her confinement during the hours designated by the Department;

(ii) admit any person or agent designated by the Department into the offender's place of confinement at any time for purposes of verifying the person's compliance with the condition of his or her confinement;

(iii) if deemed necessary by the Department, be placed on an electronic monitoring device;

(M) comply with the terms and conditions of an order of protection issued by the court pursuant to the Illinois Domestic Violence Act of 1986.[3] A copy of the order of protection shall be transmitted to the Department by the clerk of the court;

(N) refrain from entering into a designated geographic area except upon terms the Department finds appropriate. The terms may include consideration of the purpose of the entry, the time of day, others accompanying the person, and advance approval by the Department;

(O) refrain from having any contact, including written or oral communications, directly or indirectly, with certain specified persons including, but not limited to, the victim or the victim's family, and report any incidental contact with the victim or the victim's family to the

Department within 72 hours; refrain from entering onto the premises of, traveling past, or loitering near the victim's residence, place of employment, or other places frequented by the victim;

(P) refrain from having any contact, including written or oral communications, directly or indirectly, with particular types of persons, including but not limited to members of street gangs, drug users, drug dealers, or prostitutes;

(Q) refrain from all contact, direct or indirect, personally, by telephone, letter, or through another person, with minor children without prior identification and approval of the Department;

(R) refrain from having in his or her body the presence of alcohol or any illicit drug prohibited by the Cannabis Control Act[4] or the Illinois Controlled Substances Act,[5] unless prescribed by a physician, and submit samples of his or her breath, saliva, blood, or urine for tests to determine the presence of alcohol or any illicit drug;

(S) not establish a dating, intimate, or sexual relationship with a person without prior written notification to the Department;

(T) neither possess or have under his or her control any material that is pornographic, sexually oriented, or sexually stimulating, or that depicts or alludes to sexual activity or depicts minors under the age of 18, including but not limited to visual, auditory, telephonic, electronic media, or any matter obtained through access to any computer or material linked to computer access use;

(U) not patronize any business providing sexually stimulating or sexually oriented entertainment not utilize "900" or adult telephone numbers or any other sex-related telephone numbers;

(V) not reside near, visit, or be in or about parks, schools, day care centers, swimming pools, beaches, theaters, or any other places where minor children congregate without advance approval of the Department and report any incidental contact with minor children to the Department within 72 hours;

(W) not establish any living arrangement or residence without prior approval of the Department;

(X) not publish any materials or print any advertisements without providing a copy of the proposed publications to the Department officer and obtaining permission prior to publication;

(Y) not leave the county except with prior permission of the Department and provide the Department officer or agent with written travel routes to and from work and any other designated destinations;

(Z) not possess or have under his or her control certain specified items of contraband related to the incidence of sexually offending items including video or still camera items or children's toys;

(AA) provide a written daily log of activities as directed by the Department;

(BB) comply with all other special conditions that the Department may impose that restrict the person from high-risk situations and limit access or potential victims.

(6) A person placed on conditional release and who during the term undergoes mandatory drug or alcohol testing or is assigned to be placed on an approved electronic monitoring device may be ordered to pay all costs incidental to the mandatory drug or alcohol testing and all costs incidental to the approved electronic monitoring in accordance with the person's ability to pay those costs. The Department may establish reasonable fees for the cost of maintenance, testing, and incidental expenses related to the mandatory drug or alcohol testing and all costs incidental to approved electronic monitoring.

P.A. 90–40, § 40, eff. Jan. 1, 1998. Amended by P.A. 91–875, § 5, eff. June 30, 2000; P.A. 92–415, § 15, eff. Aug. 17, 2001; P.A. 93–616, § 20, eff. Jan. 1, 2004.

[1] 405 ILCS 5/3–804.
[2] 740 ILCS 110/1 et seq.
[3] 750 ILCS 60/101 et seq.
[4] 720 ILCS 550/1 et seq.
[5] 720 ILCS 570/100 et seq.

## 207/45.   Deoxyribonucleic acid analysis requirements

§ 45.   Deoxyribonucleic acid analysis requirements.

(a)(1) If a person is found to be a sexually violent person under this Act, the court shall require the person to provide a biological specimen for deoxyribonucleic acid analysis in accordance with Section 5–4–3 of the Unified Code of Corrections.[1]

(2) The results from deoxyribonucleic acid analysis of a specimen under paragraph (a)(1) of this Section may be used only as authorized by Section 5–4–3 of the Unified Code of Corrections.

(b) The rules adopted by the Illinois Department of State Police under Section 5–4–3 of the Unified Code of Corrections are the procedures that must be followed for persons to provide specimens under paragraph (a)(1) of this Section.

P.A. 90–40, § 45, eff. Jan. 1, 1998. Amended by P.A. 91–227, § 5, eff. Jan. 1, 2000.

[1] 730 ILCS 5/5–4–3.

## 207/50.   Secure facility for sexually violent persons

§ 50.   Secure facility for sexually violent persons.

(a) The Department shall place a person committed to a secure facility under paragraph (b)(2) of Section 40 of this Act at a facility provided by the Department of Corrections under subsection (b) of this Section.

(b) The Department may enter into an agreement with the Department of Corrections for the provision of a secure facility for persons committed under paragraph (b)(2) of Section 40 of this Act to a facility. The Department shall operate the facility provided by the Department of Corrections under this subsection and shall provide by rule for the nature of the facility, the level of care to be provided in the facility, and the custody and discipline of persons placed in the facility. The facility operated under this Section shall not be subject to the provisions of the Mental Health and Developmental Disabilities Code.[1]

(c) For the purposes of Section 3–6–4 of the Unified Code of Corrections,[2] a person held in detention in a secure facility or committed as a sexually violent person and held in a secure facility shall be considered a "committed person", as that term is used in Section 3–6–4 of the Unified Code of Corrections.

P.A. 90–40, § 50, eff. Jan. 1, 1998. Amended by P.A. 90–793, § 20, eff. Aug. 14, 1998.

[1] 405 ILCS 5/1–100 et seq.
[2] 730 ILCS 5/3–6–4.

## 207/55.   Periodic reexamination; report

§ 55.   Periodic reexamination; report.

(a) If a person has been committed under Section 40 of this Act and has not been discharged under Section 65 of this Act, the Department shall submit a written report to the court on his or her mental condition within 6 months after an initial commitment under Section 40 and then at least once every 12 months thereafter for the purpose of determining whether the person has made sufficient progress to be conditionally released or discharged. At the time of a reexamination under this Section, the person who has been committed may retain or, if he or she is indigent and so requests, the court may appoint a qualified expert or a professional person to examine him or her.

(b) Any examiner conducting an examination under this Section shall prepare a written report of the examination no later than 30 days after the date of the examination. The examiner shall place a copy of the report in the person's health care records and shall provide a copy of the report to the court that committed the person under Section 40. The examination shall be conducted in conformance with the standards developed under the Sex Offender Management Board Act and by an evaluator approved by the Board.

(c) Notwithstanding subsection (a) of this Section, the court that committed a person under Section 40 may order a reexamination of the person at any time during the period in which the person is subject to the commitment order. Any examiner conducting an examination under this Section shall prepare a written report of the examination no later than 30 days after the date of the examination.

(d) Petitions for discharge after reexamination must follow the procedure outlined in Section 65 of this Act.

P.A. 90–40, § 55, eff. Jan. 1, 1998. Amended by P.A. 90–793, § 20, eff. Aug. 14, 1998; P.A. 91–227, § 5, eff. Jan. 1, 2000; P.A. 91–375, § 5, eff. June 30, 2000; P.A. 93–616, § 20, eff. Jan. 1, 2004; P.A. 93–885, § 5, eff. Aug. 6, 2004.

P.A. 93–885 incorporated the amendment by P.A. 93–616.

## 207/60.  Petition for conditional release

§ 60.  Petition for conditional release.

(a) Any person who is committed for institutional care in a secure facility or other facility under Section 40 of this Act may petition the committing court to modify its order by authorizing conditional release if at least 6 months have elapsed since the initial commitment order was entered, the most recent release petition was denied or the most recent order for conditional release was revoked. The director of the facility at which the person is placed may file a petition under this Section on the person's behalf at any time.

(b) If the person files a timely petition without counsel, the court shall serve a copy of the petition on the Attorney General or State's Attorney, whichever is applicable and, subject to paragraph (c)(1) of Section 25 of this Act, appoint counsel. If the person petitions through counsel, his or her attorney shall serve the Attorney General or State's Attorney, whichever is applicable.

(c) Within 20 days after receipt of the petition, the court shall appoint one or more examiners having the specialized knowledge determined by the court to be appropriate, who shall examine the mental condition of the person and furnish a written report of the examination to the court within 30 days after appointment. The examiners shall have reasonable access to the person for purposes of examination and to the person's past and present treatment records and patient health care records. If any such examiner believes that the person is appropriate for conditional release, the examiner shall report on the type of treatment and services that the person may need while in the community on conditional

release. The State has the right to have the person evaluated by experts chosen by the State. Any examination or evaluation conducted under this Section shall be in conformance with the standards developed under the Sex Offender Management Board Act and conducted by an evaluator approved by the Board. The court shall set a probable cause hearing as soon as practical after the examiner's report is filed. If the court determines at the probable cause hearing that cause exists to believe that it is not substantially probable that the person will engage in acts of sexual violence if on release or conditional release, the court shall set a hearing on the issue.

(d) The court, without a jury, shall hear the petition within 30 days after the report of the court-appointed examiner is filed with the court, unless the petitioner waives this time limit. The court shall grant the petition unless the State proves by clear and convincing evidence that the person has not made sufficient progress to be conditionally released. In making a decision under this subsection, the court must consider the nature and circumstances of the behavior that was the basis of the allegation in the petition under paragraph (b)(1) of Section 15 of this Act, the person's mental history and present mental condition, where the person will live, how the person will support himself or herself and what arrangements are available to ensure that the person has access to and will participate in necessary treatment.

(e) Before the court may enter an order directing conditional release to a less restrictive alternative it must find the following: (1) the person will be treated by a Department approved treatment provider, (2) the treatment provider has presented a specific course of treatment and has agreed to assume responsibility for the treatment and will report progress to the Department on a regular basis, and will report violations immediately to the Department, consistent with treatment and supervision needs of the respondent, (3) housing exists that is sufficiently secure to or protect the community, and the person or agency providing housing to the conditionally released person has agreed in writing to accept the person, to provide the level of security required by the court, and immediately to report to the Department if the person leaves the housing to which he or she has been assigned without authorization, (4) the person is willing to or has agreed to comply with the treatment provider, the Department, and the court, and (5) the person has agreed or is willing to agree to comply with the behavioral monitoring requirements imposed by the court and the Department.

(f) If the court finds that the person is appropriate for conditional release, the court shall notify the Department. The Department shall prepare a plan that identifies the treatment and services, if any, that the person will receive in the community. The plan shall address the person's need, if any, for supervision, counseling, medication, community support services, residential services, vocational services, and alcohol or other drug abuse treatment. The Department may contract with a county health department, with another public agency or with a private agency to provide the treatment and services identified in the plan. The plan shall specify who will be responsible for providing the treatment and services identified in the plan. The plan shall be presented to the court for its approval within 60 days after the court finding that the person is appropriate for conditional release, unless the Department and the person to be released request additional time to develop the plan.

(g) The provisions of paragraphs (b)(4), (b)(5), and (b)(6) of Section 40 of this Act apply to an order for conditional release issued under this Section.

P.A. 90–40, § 60, eff. Jan. 1, 1998. Amended by P.A. 91–375, § 5, eff. June 30, 2000; P.A. 92–415, § 15, eff. Aug. 17, 2001; P.A. 93–616, § 20, eff. Jan. 1, 2004; P.A. 93–885, § 5, eff. Aug. 6, 2004.

EXAMINATIO 5/10-119

P.A. 93–885 incorporated the amendment by P.A. 93–616.

### 207/65. Petition for discharge; procedure

§ 65. Petition for discharge; procedure.

(a)(1) If the Secretary determines at any time that a person committed under this Act is no longer a sexually violent person, the Secretary shall authorize the person to petition the committing court for discharge. The person shall file the petition with the court and serve a copy upon the Attorney General or the State's Attorney's office that filed the petition under subsection (a) of Section 15 of this Act, whichever is applicable. The court, upon receipt of the petition for discharge, shall order a hearing to be held within 45 days after the date of receipt of the petition.

(2) At a hearing under this subsection, the Attorney General or State's Attorney, whichever filed the original petition, shall represent the State and shall have the right to have the petitioner examined by an expert or professional person of his or her choice. The examination shall be conducted in conformance with the standards developed under the Sex Offender Management Act and by an evaluator approved by the Board. The committed person or the State may elect to have the hearing before a jury. The State has the burden of proving by clear and convincing evidence that the petitioner is still a sexually violent person.

(3) If the court or jury is satisfied that the State has not met its burden of proof under paragraph (a)(2) of this Section, the petitioner shall be discharged from the custody or supervision of the Department. If the court is satisfied that the State has met its burden of proof under paragraph (a)(2), the court may proceed under Section 40 of this Act to determine whether to modify the petitioner's existing commitment order.

(b)(1) A person may petition the committing court for discharge from custody or supervision without the Secretary's approval. At the time of an examination under subsection (a) of Section 55 of this Act, the Secretary shall provide the committed person with a written notice of the person's right to petition the court for discharge over the Secretary's objection. The notice shall contain a waiver of rights. The Secretary shall forward the notice and waiver form to the court with the report of the Department's examination under Section 55 of this Act. If the person does not affirmatively waive the right to petition, the court shall set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the person is still a sexually violent person. If a person does not file a petition for discharge, yet fails to waive the right to petition under this Section, then the probable cause hearing consists only of a review of the reexamination reports and arguments on behalf of the parties. The committed person has a right to have an attorney represent him or her at the probable cause hearing, but the person is not entitled to be present at the probable cause hearing. The probable cause hearing under this Section must be held within 45 days of the filing of the reexamination report under Section 55 of this Act.

(2) If the court determines at the probable cause hearing under paragraph (b)(1) of this Section that probable cause exists to believe that the committed person is no longer a sexually violent person, then the court shall set a hearing on the issue. At a hearing under this Section, the committed person is entitled to be present and to the benefit of the protections afforded to the person under Section 25 of this Act. The committed person or the State may elect to have a hearing under this Section before a jury. A verdict of a jury under this Section is not valid unless it is unanimous. The Attorney General or State's Attorney, whichever filed the original petition, shall represent the State at a hearing under this Section. The State has the right to have the committed person evaluated by experts chosen by the State. The examination shall be conducted in conformance with the standards developed under the Sex Offender Management Board Act and by an evaluator approved by the Board. At the hearing, the State has the burden of proving by clear and convincing evidence that the committed person is still a sexually violent person.

(3) If the court or jury is satisfied that the State has not met its burden of proof under paragraph (b)(2) of this Section, the person shall be discharged from the custody or supervision of the Department. If the court or jury is satisfied that the State has met its burden of proof under paragraph (b)(2) of this Section, the court may proceed under Section 40 of this Act to determine whether to modify the person's existing commitment order.

P.A. 90–40, § 65, eff. Jan. 1, 1998. Amended by P.A. 91–227, § 5, eff. Jan. 1, 2000; P.A. 92–415, § 15, eff. Aug. 17, 2001; P.A. 93–616, § 20, eff. Jan. 1, 2004.

**Validity**

Subsection (b)(1) was held unconstitutional by People v. Botruff, App. 2 Dist.2002, 265 Ill.Dec. 866, 331 Ill.App.3d 486, 771 N.E.2d 570, appeal allowed 271 Ill.Dec. 930, 201 Ill.2d 579, 786 N.E.2d 183.

### 207/70. Additional discharge petitions

§ 70. Additional discharge petitions. In addition to the procedures under Section 65 of this Act, a committed person may petition the committing court for discharge at any time, and the court must set the matter for a probable cause hearing; however, if a person has previously filed a petition for discharge without the Secretary's approval and the court determined, either upon review of the petition or following a hearing, that the person's petition was frivolous or that the person was still a sexually violent person, then the court shall deny any subsequent petition under this Section without a hearing unless the petition contains facts upon which a court could find that the condition of the person had so changed that a hearing was warranted. If the court finds that a hearing is warranted, the court shall set a probable cause hearing and continue proceedings under paragraph (b)(2) of Section 65, if appropriate. If the person has not previously filed a petition for discharge without the Secretary's approval, the court shall set a probable cause hearing and continue proceedings under paragraph (b)(2) of Section 65, if appropriate.

P.A. 90–40, § 70, eff. Jan. 1, 1998. Amended by P.A. 91–227, § 5, eff. Jan. 1, 2000.

### 207/75. Notice concerning conditional release, discharge, escape, death, or court-ordered change in the custody status of a detainee or civilly committed sexually violent person

§ 75. Notice concerning conditional release, discharge, escape, death, or court-ordered change in the custody status of a detainee or civilly committed sexually violent person.

(a) As used in this Section, the term:

(1) "Act of sexual violence" means an act or attempted act that is a basis for an allegation made in a petition under paragraph (b) (1) of Section 15 of this Act.

(2) "Member of the family" means spouse, child, sibling, parent, or legal guardian.

**CRIMINAL PROCEDURE**

(3) "Victim" means a person against whom an act of sexual violence has been committed.

(b) If the court places a civilly committed sexually violent person on conditional release under Section 40 or 60 of this Act or discharges a person under Section 65, or if a detainee or civilly committed sexually violent person escapes, dies, or is subject to any court-ordered change in custody status of the detainee or sexually violent person, the Department shall make a reasonable attempt, if he or she can be found, to notify all of the following who have requested notification under this Act or under the Rights of Crime Victims and Witnesses Act: [1]

(1) Whichever of the following persons is appropriate in accordance with the provisions of subsection (a)(3):

(A) The victim of the act of sexual violence.

(B) An adult member of the victim's family, if the victim died as a result of the act of sexual violence.

(C) The victim's parent or legal guardian, if the victim is younger than 18 years old.

(2) The Department of Corrections.

(c) The notice under subsection (b) of this Section shall inform the Department of Corrections and the person notified under paragraph (b)(1) of this Section of the name of the person committed under this Act and the date the person is placed on conditional release, discharged, or if a detainee or civilly committed sexually violent person escapes, dies, or is subject to any court-ordered change in the custody status of the detainee or sexually violent person. The Department shall send the notice, postmarked at least 7 days before the date the person committed under this Act is placed on conditional release, discharged, or if a detainee or civilly committed sexually violent person escapes, dies, or is subject to any court-ordered change in the custody status of the detainee or sexually violent person, unless unusual circumstances do not permit advance written notification, to the Department of Corrections and the last-known address of the person notified under paragraph (b)(1) of this Section.

(d) The Department shall design and prepare cards for persons specified in paragraph (b)(1) of this Section to send to the Department. The cards shall have space for these persons to provide their names and addresses, the name of the person committed under this Act and any other information the Department determines is necessary. The Department shall provide the cards, without charge, to the Attorney General and State's Attorneys. The Attorney General and State's Attorneys shall provide the cards, without charge, to persons specified in paragraph (b)(1) of this Section. These persons may send completed cards to the Department. All records or portions of records of the Department that relate to mailing addresses of these persons are not subject to inspection or copying under Section 3 of the Freedom of Information Act. [2]

P.A. 90–40, § 75, eff. Jan. 1, 1998. Amended by P.A. 90–793, § 20, eff. Aug. 14, 1998; P.A. 93–885, § 5, eff. Aug. 6, 2004.

[1] 725 ILCS 120/1 et seq.

[2] 5 ILCS 140/1 et seq.

### 207/80. Applicability

§ 80. Applicability. This Act applies to a sexually violent person regardless of whether the person engaged in acts of sexual violence before, on, or after the effective date of this Act.

P.A. 90–40, § 80, eff. Jan. 1, 1998.

### 207/90. Committed persons ability to pay for services

§ 90. Committed persons ability to pay for services. Each person committed or detained under this Act who receives services provided directly or funded by the Department and the estate of that person is liable for the payment of sums representing charges for services to the person at a rate to be determined by the Department. Services charges against that person take effect on the date of admission or the effective date of this Section. The Department in its rules may establish a maximum rate for the cost of services. In the case of any person who has received residential services from the Department, whether directly from the Department or through a public or private agency or entity funded by the Department, the liability shall be the same regardless of the source of services. When the person is placed in a facility outside the Department, the facility shall collect reimbursement from the person. The Department may supplement the contribution of the person to private facilities after all other sources of income have been utilized; however the supplement shall not exceed the allowable rate under Title XVIII or Title XIX of the Federal Social Security Act [1] for those persons eligible for those respective programs. The Department may pay the actual costs of services or maintenance in the facility and may collect reimbursement for the entire amount paid from the person or an amount not to exceed the maximum. Lesser or greater amounts may be accepted by the Department when conditions warrant that action or when offered by persons not liable under this Act. Nothing in this Section shall preclude the Department from applying federal benefits that are specifically provided for the care and treatment of a disabled person toward the cost of care provided by a State facility or private agency. The Department may investigate the financial condition of each person committed under this Act, may make determinations of the ability of each such person to pay sums representing services charges, and for those purposes may set a standard as a basis of judgment of ability to pay. The Department shall by rule make provisions for unusual and exceptional circumstances in the application of that standard. The Department may issue to any person liable under this Act a statement of amount due as treatment charges requiring him or her to pay monthly, quarterly, or otherwise as may be arranged, an amount not exceeding that required under this Act, plus fees to which the Department may be entitled under this Act.

(a) Whenever an individual is covered, in part or in whole, under any type of insurance arrangement, private or public, for services provided by the Department, the proceeds from the insurance shall be considered as part of the individual's ability to pay notwithstanding that the insurance contract was entered into by a person other than the individual or that the premiums for the insurance were paid for by a person other than the individual. Remittances from intermediary agencies under Title XVIII of the Federal Social Security Act for services to committed persons shall be deposited with the State Treasurer and placed in the Mental Health Fund. Payments received from the Department of Public Aid under Title XIX of the Federal Social Security Act for services to those persons shall be deposited with the State Treasurer and shall be placed in the General Revenue Fund.

(b) Any person who has been issued a Notice of Determination of sums due as services charges may petition the Department for a review of that determination. The petition must be in writing and filed with the Department within 90

EXAMINATN
5/10-119

days from the date of the Notice of Determination. The Department shall provide for a hearing to be held on the charges for the period covered by the petition. The Department may after the hearing, cancel, modify, or increase the former determination to an amount not to exceed the maximum provided for the person by this Act. The Department at its expense shall take testimony and preserve a record of all proceedings at the hearing upon any petition for a release from or modification of the determination. The petition and other documents in the nature of pleadings and motions filed in the case, a transcript of testimony, findings of the Department, and orders of the Secretary constitute the record. The Secretary shall furnish a transcript of the record to any person upon payment of 75¢ per page for each original transcript and 25¢ per page for each copy of the transcript. Any person aggrieved by the decision of the Department upon a hearing may, within 30 days thereafter, file a petition with the Department for review of the decision by the Board of Reimbursement Appeals established in the Mental Health and Developmental Disabilities Code.[2] The Board of Reimbursement Appeals may approve action taken by the Department or may remand the case to the Secretary with recommendation for redetermination of charges.

(c) Upon receiving a petition for review under subsection (b) of this Section, the Department shall thereupon notify the Board of Reimbursement Appeals which shall render its decision thereon within 30 days after the petition is filed and certify such decision to the Department. Concurrence of a majority of the Board is necessary in any such decision. Upon request of the Department, the State's Attorney of the county in which a client who is liable under this Act for payment of sums representing services charges resides, shall institute appropriate legal action against any such client, or within the time provided by law shall file a claim against the estate of the client who fails or refuses to pay those charges. The court shall order the payment of sums due for services charges for such period or periods of time as the circumstances require. The order may be entered against any defendant and may be based upon the proportionate ability of each defendant to contribute to the payment of sums representing services charges including the actual charges for services in facilities outside the Department where the Department has paid those charges. Orders for the payment of money may be enforced by attachment as for contempt against the persons of the defendants and, in addition, as other judgments for the payment of money, and costs may be adjudged against the defendants and apportioned among them.

(d) The money collected shall be deposited into the Mental Health Fund.

P.A. 90-40, § 90, added by P.A. 90-793, § 20, eff. Aug. 14, 1998.

[1] 42 U.S.C.A. §§ 1395 et seq. or 1396 et seq.
[2] 405 ILCS 5/1-100 et seq.

### 207/99. Effective date

§ 99. Effective date. This Act takes effect January 1, 1998.

P.A. 90-40, § 99, eff. Jan. 1, 1998.

## ACT 210. STATE'S ATTORNEYS APPELLATE PROSECUTOR'S ACT

Section
210/1.    Short title.

Section
210/2.    Definitions.
210/3.    Creation; membership; term; election; quorum; compensation; vacancies.
210/4.    Powers and duties.
210/4.01.    Cases represented on appeal; duties under Public Labor Relations Act; tax objections.
210/4.02.    Appointment of Director.
210/4.03.    Advise the Director; operation of office.
210/4.04.    Establishment of district offices.
210/4.05.    Approval of budget; number of employees.
210/4.06.    Annual report.
210/4.07.    Acceptance and expenditure of gifts and services; contracts.
210/4.08.    Law students as legal assistants and interns.
210/4.09.    Administration of Act.
210/4.10.    Training programs; dissemination of current case and legislative information; continuing legal education trust fund.
210/5.    Oath of office.
210/6.    Organization.
210/7.    Powers and duties of Director.
210/7.01.    Appointment of Director.
210/7.02.    Hiring of employees; compensation; limitations.
210/7.03.    Organization of office and duties of employees.
210/7.04.    Reports.
210/7.05.    Annual budget.
210/7.06.    Employment of investigators.
210/8.    Prosecution of appeals.
210/9.    State's attorneys appellate prosecutor's county fund.
210/9.01.    Appropriation for expenses.
210/9.02.    Allocation of county expenses.
210/9.03.    Reduction of county contributions.
210/9.04.    Participation of county following allocation.
210/9.05.    Determination of population.
210/10.    Participation in succeeding years.
210/11.    Application of Administrative Procedure Act.

### Enactment

*Provisions comprising this act were added by P.A. 80-1, 1st Sp.Sess., and by P.A. 80-3, 1st Sp. Sess.*

*P.A. 80-3, 1st Sp.Sess. was repealed by P.A. 80-1331, § 2, eff. Aug. 7, 1978. See note set out under § 3 of this act, post.*

*P.A. 80-3, 1st Sp.Sess. was also repealed by P.A. 80-1364, § 4, eff. Aug. 13, 1978, in language identical to that of P.A. 80-1331, § 2, set out in note under § 3 of this act, post.*

*P.A. 80-1364, the 1978 Combining Revisory Act, declared in its title that it related to the "nonsubstantive revision, renumbering or repeal of Sections of Acts necessitated by the amendment, amendment and repeal, or addition of Sections by two or more Public Acts of the 80th General Assembly".*

### 210/1. Short title

§ 1. This Act may be cited as the State's Attorneys Appellate Prosecutor's Act.

P.A. 80-1, 1st Sp.Sess., § 1, eff. Dec. 3, 1977. Amended by P.A. 84-1062, § 1, eff. July 1, 1986.

Formerly Ill.Rev.Stat.1991, ch. 14, ¶ 201.

Exhibit B

**EXHIBIT B.**

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | AMY J. ST. EVE | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 6088 | **DATE** | 05/22/2007 |
| **CASE TITLE** | Allen L. Moore (#864976) v. Thomas Monahan, et al. | | |

**DOCKET ENTRY TEXT:**

The Clerk is directed to issue alias summonses so that the U.S. Marshal can re-attempt service on Defendants Bernard M. Akpan, Jack Graham, Leslie Hogan, Shawndo Cleveland, Tony Humphrey, Timothy Burnette, Steve Strock, Tammy Chasteen, N. Thompson, and Lea Chankin. The Clerk is further directed to mail copies of this order to the U.S. Marshal's Service in Chicago as well as in the Central District (Peoria Division). MOTION by Plaintiff Allen L. Moore to compel the United States Marshal Service to serve summons form on the defendants [57] is denied as moot.

■ [For further details see text below.]

Docketing to mail notices.

### STATEMENT

    The U.S. Marshals Service's returned summonses unexecuted as to defendants Bernard M. Akpan, Jack Graham, Leslie Hogan, Shawndo Cleveland, Tony Humphrey, Timothy Burnette, Steve Strock, Tammy Chasteen, N. Thompson, and Lea Chankin with a notation that they were no longer DHS employees.

    The U.S. Marshal is directed to make all reasonable efforts to serve these defendants. With respect to former employees who no longer can be found either at the work address provided by plaintiff or at Rushville, the Illinois Department of Human Services shall furnish the Marshal with the defendants' last-known addresses or any other information it may have as to their current whereabouts. The information shall be used only for purposes of effectuating service [or for proof of service, should a dispute arise] and any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file, nor disclosed by the Marshal. The Marshal is authorized to mail a request for waiver of service to the defendants in the manner prescribed by Fed. R. Civ. P. 4(d)(2) before attempting personal service.

| | Courtroom Deputy Initials: | tmh |
|---|---|---|

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALLEN L. MOORE,                    )
                                   )
        Plaintiff,                 )      Case No.  06 C 6088
                                   )
    v.                             )
                                   )      Hon. Judge. Amy J. St.Eve
THOMAS MONAHAN, et al.,            )
                                   )      Presiding.
        Defendant(s).              )
                                   )

## PROOF OF SERVICE

To: JAMES C. VLAHAKIS                  To: ALICE E. KEANE
    HINSHAW & CULBERTSON LLP               ASSISTANT ATTORNEY GENERAL
    222 North LaSalle Street, Suite 300    GENERAL LAW BUREAU
    Chicago, IL 60601                      100 West Randolph St., 13th Fl.
                                           Chicago, IL 60601
To: JACK T. RILEY
    BRIAN P. GAINER
    JOHNSON & BELL, Ltd.
    33 W. Monroe, Ste. 2700
    Chicago, IL 60603

        PLEASE TAKE NOTICE that on **April 28th** 2008, I caused
to be filed the attached **MOTION FOR RECONSIDERATION OR IN THE ALTERNATIVE
NOTICE OF APPEAL** and **MOTION TO FILE DELAYED RESPONSE**, with the Clerk of
the United States District Court for the Northern District of Illinois,
Eastern Division, by mailing as said from the address of Rural Route # 1,
Box 6-A, Rushville, Illinois to the above Court and Clerk thereof.


Allen L. Moore, Acting Pro-Se
Illinois Dept. of Human Services
Treatment and Detention Facility
R.R # 1, Box 6-A
Rushville, IL 62681

## CERTIFICATE OF SERVICE

    The undersigned states and certifies that an exact photocopy of
the above mentioned was served upon the abeved named at the adrress by
depositing the same in the United States mail, on **April 28th 2008**, from
Rural Route # 1, Box 6-A, Rushville, Illinois 62681.

_Allen L. Moore_

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 6088 | **DATE** | 5/13/2008 |
| **CASE TITLE** | Moore vs. Monahan | | |

**DOCKET ENTRY TEXT**

The Court denies Plaintiff's motion for reconsideration [145]. The Court directs appointed counsel to submit in writing why the Court should not dismiss Defendant Thompson for want of service by Friday, May 30, 2008.

■[ For further details see text below.]

Notices mailed by Judicial staff.

---

## STATEMENT

Before the Court is Plaintiff Allen L. Moore's pro se motion for reconsideration challenging the Court's January 10, 2008, Memorandum, Opinion, and Order granting in part and denying in part Defendants' motions to dismiss. Although Moore is represented by appointed counsel, the Court granted his motion for leave to file the present pro se motion for reconsideration. Based on the following discussion, the Court denies Moore's motion. In addition, the Court directs appointed counsel to submit in writing why the Court should not dismiss Defendant Thompson for want of service by Friday, May 30, 2008.

### LEGAL STANDARD

Because the Court's January 10, 2008, order was not a final order, the Court exercises its inherent authority to reconsider its interlocutory order because it is "subject to revision at any time before the entry of judgment adjudicating all the claims." *See* Fed.R.Civ.P. 54(b); *see also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 12, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge"); *Sims v. EGA Prods., Inc.,* 475 F.3d 865, 870 (7th Cir. 2007) ("nonfinal orders are generally modifiable"). Accordingly, under Rule 54(b), the Court may correct clear errors of fact or law in its non-final order. *See Zurich Capital Mkt., Inc. v. Coglianese,* 383 F.Supp.2d 1041, 1045 (N.D. Ill. 2005).

### BACKGROUND

Plaintiff Allen L. Moore is in the custody of the Department of Human Services ("DHS") on parole from the Department of Corrections ("IDOC") awaiting the determination of his civil commitment under the Illinois Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq.*) ("SVP Act"). Presently, Moore resides at the DHS Treatment and Detention Facility ("TDF") in Rushville, Illinois. On November 7, 2006, Moore filed a Complaint seeking declaratory judgment, injunctive relief, and compensatory and punitive

**STATEMENT**

damages for violations of his constitutional rights for incidents he alleges occurred in connection with his refusal to comply with his room reassignment at the TDF in Joliet, Illinois.

**ANALYSIS**

**I.    Conditions of Confinement**

In his Complaint, Moore challenged the conditions of his confinement. *See Farmer v. Brennan,* 511 U.S. 825, 832-33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). As the Court discussed in its earlier order, sexually violent persons are treated similarly to pre-trial detainees because they may not be subjected to conditions of confinement that amount to punishment without due process of law. *See Youngberg v. Romeo,* 457 U.S. 307, 320-21, 102 S.Ct. 2453, 73 L.Ed.2d 28 (1982) ("[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."). Under the circumstances, the same constitutional standards apply to both pre-trial detainees and individuals who are civilly committed. *See Allison v. Snyder,* 332 F.3d 1076, 1079 (7th Cir. 2003); *see also Brown v. Budz,* 398 F.3d 904, 910 (7th Cir. 2005).

In his motion for reconsideration, Moore contends that the Court erred in relying on *Hargett v. Adams*, No. 02 C 1456, 2005 WL 399300, at *8 (N.D. Ill. Jan. 14, 2005), because the *Hargett* plaintiffs were individuals who had been civilly committed under SVP Act, whereas Moore is a pre-trial detainee awaiting the determination of his civil commitment under the SVP Act. Because the same constitutional standards apply to both pre-trial detainees and civilly committed individuals, Moore's distinction does not change the Court's reliance on the *Hargett* decision. Therefore, the Court denies Moore's motion for reconsideration based on this argument.

**II.    Dismissal of Defendant Shawndo Cleveland**

Next, Moore contends that the Court erred in dismissing Defendant Cleveland from this lawsuit because Moore alleged that Cleveland used excessive force against him in the context of his failure to protect claim. To state a failure to protect claim, Moore was required to allege that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) Defendants acted with "deliberate indifference" to that risk. *See Brown,* 398 F.3d at 909 (citation omitted). To satisfy the first prong, "a plaintiff must allege not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that serious harm might actually occur." *Id.* at 910. To satisfy the second prong, a plaintiff must allege that the defendant actually knew of the substantial risk of serious harm, yet disregarded it. *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007).

Here, Moore's allegation that Defendant Cleveland used excessive force against him does not cure the deficiencies in his allegations. Specifically, Moore still fails to allege "that there was a substantial risk beforehand that serious harm might actually occur," *see Brown,* 398 F.3d at 910, or that Defendants knew of any substantial risk of harm, yet disregarded it. *See Guzman,* 495 F.3d at 859. Therefore, the Court denies Moore's motion for reconsideration regarding his failure to protect claim.

**III.    Dismissal of Defendant Nathaniel Thompson**

In the Court's January 2008 order, the Court directed Moore to show good cause in writing why the Court should not dismiss Defendant Thompson from this lawsuit for want of service. Because this matter is

**STATEMENT**

best resolved by Moore's appointed counsel, the Court directs counsel to submit in writing why the Court should not dismiss Defendant Thompson for want of service by Friday, May 30, 2008.

**IV.    Appellate Jurisdiction**

Finally, the Court's January 10, 2008, Memorandum, Opinion, and Order is not a final order pursuant to 28 U.S.C. § 1291 because there are open issues of facts and law to be adjudicated in this lawsuit.  *See Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 928 (7th Cir. 2008).  Because the January order is not a final decision for purposes of appellate jurisdiction, Moore's request to appeal this order is denied.  *See Sims,* 475 F.3d at 871 (decisions are final if they end the litigation in district court).

E-FILED
Friday, 16 May, 2008  01:08:02 PM
Clerk, U.S. District Court, ILCD

# TEAM LEADER
## POSITION DESCRIPTION
## JOLIET TREATMENT AND DETENTION FACILITY

**Date Prepared:** January 10, 2003
**Supervises:** Members assigned to team including Clinical Therapists, Case Manager, Recreation Therapist, Substance Abuse Counselor, Psychometrist

**Reports To and Evaluated By:** Associate Clinical Director

Supervises clinical staff members of varying disciplines as leader of a multi-disciplinary treatment team.  Ensures quality care is delivered in the treatment of sexual offending to residents of the Treatment and Detention Facility.  Functions as a member of the management team to foster program development and the creation and implementation of treatment-related policies and procedures.

## DUTIES AND RESPONSIBILITIES
1) Comply with all laws, policies and procedures, rules and regulations formulated by the State of Illinois Department of Human Services (DHS) and Liberty Health Care (Liberty), and any applicable professional governing bodies.
2) Provide support, direction, clinical and administrative supervision to treatment staff under their direction.  Assigns or delegates other duties as necessary.
3) Perform Mental Status Evaluations on new admissions assigned to their team within 24 hours of resident's arrival.
4) Administer psychological testing (e.g., Rorschach) and writes integrative psychological reports for residents as assigned (Licensed Psychologist), or performs comparable assessments/evaluations within scope of professional licensure (LCSW).
5) Lead quarterly staffings on residents assigned to their team.
6) Deliver cognitive-behavioral treatment and psychoeducation to individuals and groups as assigned.  Documentation of service delivery and resident progress on a weekly basis, in accordance with established standards and time frames.
7) Serve as member of the Behavior Committee for residents assigned to their team, and for residents assigned to other teams as directed.
8) Ensure that staff under their direction are familiar with clinical and operating policies and procedures and informed on policy updates and revisions.
9) Ensure that programmatic duties and responsibilities are being met by team members.
10) Responsible for ensuring quality assurance of resident clinical files.
11) Meet regularly with Associate Clinical Director for supervision to provide updates and summaries of clinical operations for their team.
12) Assume leadership role when appropriate at all-staff meetings, case conferences and training activities.
13) Provide court testimony as necessary regarding resident participation in and response to the treatment program.
14) Work collaboratively with DHS unit management and security staff.

15) Participate and contribute at a management level in Team meetings and executive staff meetings.
16) Provide back up administrative functions as assigned and for other clinical staff as needed.
17) Contribute to program development, creation of policies and procedures, and other areas of administrative development of the treatment program.
18) Other duties as assigned.


**Knowledge and Skills**
1) Minimum of two years experience providing sex offender specific treatment or other, related clinical services in a correctional or forensic setting.
2) Previous supervisory experience in a mental health setting, or clearly demonstrated leadership and organizational skills.
3) Superb clinical observation skills.
4) Excellent interpersonal skills and demonstrated ability to build rapport with a wide range of personalities.
5) Appreciation of the need for and ability to maintain appropriate personal boundaries in working with sexual offender populations.
6) Ability to form and maintain good working relationships with a diverse staff and a commitment to enhancing cultural competency.


**Education/Licensure**
1) Doctoral Degree in Clinical or Counseling Psychology or related field, licensed/ licensed-eligible as a Clinical Psychologist in Illinois, or Masters Degree in Social Work, licensed/ licensed-eligible as a Clinical Social Worker (LCSW).

E-FILED
Friday, 16 May, 2008  01:08:20 PM
Clerk, U.S. District Court, ILCD

# GRIEVANCE EXAMINER
## POSITION DESCRIPTION
### RUSHVILLE TREATMENT AND DETENTION FACILITY

**Date Prepared:** January 10, 2003
**Supervises:** None
**Reports To and Evaluated By:** Facility Director, Associate Clinical Director

Coordinates investigation and follow through of all resident grievances.  Utilizing information from appropriate supervisory personnel, examines individual grievances and makes recommendations to Facility Director concerning upholding or denying resident complaints.

**Duties and Responsibilities**

1) Comply with all laws, policies and procedures, rules and regulations formulated by the State of Illinois Department of Human Services (DHS) and Liberty Health Care (Liberty), and any applicable professional governing bodies.
2) Log and date-stamp all incoming resident grievances.  Direct flow of information concerning grievances through all steps of the process, including correlating grievances with incident reports and assuring that copies of each grievance are delivered to all appropriate persons.
3) Maintain electronic data base system of resident grievances which tracks grievances at each stage of processing and allows for retrieval of grievances by topic, grievant or date.
4) Enter record of grievances into Liberty Qualitycare system.
5) Coordinate collection of additional information as necessary from Case Managers, Team Leaders, Executive II's, or other relevant supervisory personnel.
6) Meet with residents as needed to gather additional information related to grievances, explain grievance procedures, and facilitate informal resolution of resident concerns.
7) Provide written summary of each grievance, analysis of situation, reference to established guidelines, past practices or protocols and make written recommendation including suggested resolution to Facility Director.
8) Follow through and track that all grievance resolutions are implemented by designated staff in a timely manner.
9) Submit quarterly reports regarding number of grievances, percentage of residents filing grievances, timeliness of responses, topics by percentage, and other relevant data pertaining to grievances.
10) Make recommendations that will help streamline and increase efficiency in the grievance process.
11) Attend and actively participate in staff meetings, case conferences, case presentations, staff development meetings and training activities.
12) Other duties as assigned.

**Knowledge and Skills**

1) High School Diploma, or formal educational equivalent of same.
2) Excellent communication and organization skills.
3) Strong knowledge of word processing, spreadsheet and database applications.
4) Ability to maintain confidential client information.
5) Balanced, unbiased approach to performance of job duties.
6) Prior work experience in mental health or correctional organizations.
7) Demonstrated interpersonal skills and the ability to establish rapport and maintain objectivity with a criminal or forensic population.
8) Appreciation of the need for and ability to maintain appropriate personal boundaries in working with sexual offender populations.
9) Ability to form and maintain good working relationships with a diverse staff and a commitment to enhancing cultural competency.

Order Form(01/2005)

E-FILED
Friday, 16 May, 2008 01:08:36 PM
Clerk, U.S. District Court, ILCD

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 0940 | **DATE** | 2/20/2008 |
| **CASE TITLE** | Gregory A. White v. Ill. Dept. of Human Services, et al. | | |

**DOCKET ENTRY TEXT:**

The plaintiff's motion for leave to proceed *in forma pauperis* [#3] is denied. The complaint is dismissed on preliminary review pursuant to 28 U.S.C. § 1915(e)(2)(B). The case is terminated. The plaintiff's motion for appointment of counsel [#4] is denied as moot.

■ **[For further details see text below.]**

Docketing to mail notices.
\* Mail AO 450 form.

---

### STATEMENT

The plaintiff, a civil detainee in the custody of the Illinois Department of Human Services, has brought this *pro se* civil rights action purportedly pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, D.H.S. officials, lost or stole personal property that was placed in storage while the plaintiff temporarily left the Joliet Treatment and Detention Facility to face criminal charges in Will County; he additionally alleges that the defendants wrongfully denied his ensuing grievances relating to the lost property. For the reasons stated in this order, the complaint is dismissed on initial review.

It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519 (1972); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). "[A] district court judge should deny leave to proceed *in forma pauperis* if an action is frivolous or malicious." *Wartman v. Branch 7, Civil Division, County Court, Milwaukee County, State of Wisconsin*, 510 F.2d 130, 134 (7th Cir. 1975), *principle reaffirmed in Bryan v. Johnson*, 821 F.2d 455, 458 (7th Cir. 1987). A frivolous complaint is one in which "the petitioner can make no rational argument in law or facts to support his or her claim for relief." *Williams v. Faulkner*, 837 F.2d 304, 306 (7th Cir. 1988), *aff'd sub nom Neitzke v. Williams*, 490 U.S. 319 (1989). Because the plaintiff has indicated that he is indigent, the court has reviewed the claims raised to determine whether they state a colorable cause of action under 42 U.S.C. § 1983. [The plaintiff is technically not a "prisoner;" therefore, the Prison Litigation Reform Act does not apply to this lawsuit and installment payments toward the filing fee will not be required.]

**(CONTINUED)**

| | mjm |
|---|---|

## STATEMENT (continued)

The plaintiff has no viable federal claim in connection with his lost or stolen personal belongings. An unauthorized, intentional deprivation of property by a state actor does not constitute a due process violation if the State provides a meaningful post-deprivation remedy. *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996). The Illinois Court of Claims provides the plaintiff with an adequate remedy to redress his property loss. The plaintiff might also have filed an action in the state circuit court for the tort of conversion. *See Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). Because the State of Illinois provides an adequate post-deprivation remedy, the loss of the plaintiff's property is not actionable under 42 U.S.C. § 1983. *See Gable v. City of Chicago*, 296 F.3d 531, 540 (7th Cir. 2002).

In fact, the plaintiff specifically states in his complaint that he has already litigated this matter in small claims court. [Exhibits to the complaint relate to the Illinois Court of Claims, and not the small claims court; it is unclear whether the plaintiff pursued remedies in both the small claims court and the Court of Claims or simply provided a misnomer in the complaint]. The plaintiff's dissatisfaction with the outcome of that lawsuit does not render the state court proceedings "unmeaningful." *See Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir. 1996) (holding that postdeprivation remedy must be "meaningless or nonexistent" to be inadequate). The plaintiff had the opportunity to present his claims in the state court system–and exercised that right.

The court additionally finds that the plaintiff's claims are barred by the *Rooker-Feldman* doctrine and the principle of claim preclusion. The *Rooker-Feldman* doctrine instructs that the lower federal courts may not exercise what amounts to appellate jurisdiction over state courts. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). Under the *Rooker-Feldman* doctrine, a person seeking review of a state court judgment must appeal the judgment; it is not proper to seek review in the federal district court. *See, e.g., Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 509-10 (7th Cir. 1996); *Garry v. Geils*, 82 F.3d 1362, 1365-66 (7th Cir. 1996).

In turn, claim preclusion bars relitigation of matters already decided by a court of competent jurisdiction. Claim preclusion requires (1) a prior final judgment on the merits; (2) the same claim; and (3) the same parties or their privies. *Tartt v. Nw. Cmty. Hosp.*, 453 F.3d 817, 822 (7th Cir. 2006). Claim preclusion bars not only issues actually decided in the prior suit, but also those that could have been raised. *Highway J Citizens Group v. United States Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006). For purposes of claim preclusion, "a claim is not an argument or a ground but the events claimed to give rise to a right to a legal remedy." *Bethesda Lutheran Homes & Servs., Inc. v. Born*, 238 F.3d 853, 857 (7th Cir. 2001). Because the plaintiff has already had a full and fair opportunity to seek redress for the loss of his property in the Illinois Court of Claims, he is barred from relitigating the matter in federal court.

The plaintiff cannot resuscitate his claim by suing grievance examiners. A prison official can be liable under 42 U.S.C. § 1983 for failing to respond to violations of a prisoner's constitutional rights that come to his or

**(CONTINUED)**

her attention via the grievance process. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *Verser v. Elyea*, 113 F.Supp.2d 1211, 1215 (N.D. Ill. 2000) (Bucklo, J.).  This, however, is a consequence of the official's duty under federal law to prevent and remedy constitutional violations, not a duty to respond to grievances.  There is no constitutional right to an institutional grievance procedure.  Illinois statutes and regulations establishing the Department of Corrections' grievance procedures neither create a liberty interest under the Fourteenth Amendment's due process clause, *Antonelli v. Sheahan*, 81 F.3d 1422, 1430-31 (7th Cir. 1996), nor, as discussed above, do they create a right to sue under state law.  Particularly because there is no underlying constitutional violation, the plaintiff cannot sue grievance officials under 42 U.S.C. § 1983 for denying his grievances.

For the foregoing reasons, this suit is dismissed on preliminary review for failure to state a claim upon which relief may be granted.  If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).